NATIONAL FIBERSTOCK CORPORA-
TION (GREATER NEW YORK MU-
TUAL INSURANCE COMPANY), Pe-
titioner

v.

WORKERS' COMPENSATION
APPEAL BOARD (GRAHL),
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on briefs March 7, 2008.
Decided Aug. 29, 2008.

Sandra R. Craig, Philadelphia, for petitioners.

Martin J. Fallon, Jr., Philadelphia, for respondent.

BEFORE: LEADBETTER, President Judge, PELLEGRINI, Judge, LEAVITT, Judge.

OPINION BY Judge LEAVITT.

National Fiberstock Corporation (Employer) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) reinstating Debra Grahl's

(Claimant) disability benefits and imposing penalties on Employer. The Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Claimant's work-disability had recurred because her physical condition had changed after the date on which her benefits were terminated. Employer was also ordered to pay penalties because it had failed to comply with a previous order of the WCJ to pay penalties. For the reasons that follow, we will affirm.

On April 23, 1992, Claimant, who worked for Employer as a machine operator, suffered a work-related injury. Employer issued a notice of compensation payable describing the work-related injury to be "numbness in fingers and hand with pain in wrist, right wrist," and Claimant began receiving benefits. Reproduced Record 6a (R.R. ——). On July 23, 1992, Claimant underwent surgery to release carpal tunnel syndrome in her right wrist and thereafter, on October 19, 1992, on her left wrist. On July 13, 1993, Claimant returned to her pre-injury position without a loss in earnings and continued to work until Employer closed the plant in 1994; Employer then resumed Claimant's temporary total disability benefits.

On November 7, 1997, Employer filed a termination petition alleging that Claimant had fully recovered from her work-related injury. At the hearing, Claimant testified that she continued to experience pain and tingling in her thumb, index and middle fingers. However, on the basis of Employer's medical evidence, the WCJ found that Claimant had fully recovered from her work injury as of October 20, 1997, and, therefore, granted Employer's termination petition on March 27, 2002. Claimant appealed to the Board, but it affirmed the WCJ.

On May 30, 2000, while Employer's 1997 termination petition was being litigated, Claimant underwent a repeat carpal tunnel syndrome release on her right wrist. Employer adjusted the medical bill on September 11, 2000, but did not make timely payment on it. On January 27, 2004, Claimant filed a penalty petition alleging that Employer violated the Workers' Compensation Act (Act)[1] by failing to pay for her May 2000 carpal tunnel surgery. Employer finally remitted payment on March 8, 2004. On January 31, 2005, the WCJ granted Claimant's penalty petition, finding Employer's 42–month delay in making the medical payment a violation of the Act. The WCJ ordered Employer to do the following:

Pay to claimant the equivalent of fifty percent (50%) of the $1,144.71 medical bill, plus statutory interest on that bill from October 11, 2001 through March 8, 2004 . . .

WCJ Decision, January 31, 2005, at 3; R.R. 103a. Additionally, Employer was ordered to pay unreasonable contest fees.

On February 2, 2005, Claimant filed a reinstatement petition alleging that as of January 3, 2005, she suffered a recurrence of her work-related disability, in the nature of a worsening of her condition. Employer denied the allegations.

On August 1, 2005, Claimant filed another penalty petition, asserting that Employer did not pay the 50 percent penalty ordered by the WCJ on January 31, 2005, for non-payment of her 2000 wrist surgery. Employer denied the allegations, but on September 1, 2005, Employer issued a check to Claimant for the penalty amount. However, Employer's payment did not include interest. Claimant's reinstatement and penalty petitions were consolidated.

---

**1.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708.

Hearings were conducted by the WCJ.[2] Claimant testified that, although she had been found fully recovered as of October 20, 1997, she continued to experience pain and numbness in her fingers since 1994, when the plant closed. Claimant also testified that her symptoms began to get worse in 2002. Claimant stated that, by 2004, she experienced even more pain, numbness and tingling in her thumb, index, middle, and ring fingers in both hands. Claimant also testified that she received Employer's penalty payment on September 1, 2005, but that she still had not received the interest awarded by the WCJ.

Claimant offered the expert opinion of Norman Stempler, M.D., a board-certified orthopedic surgeon. Dr. Stempler testified that he first examined Claimant on January 3, 2005, and at that time reviewed Claimant's medical history, records, and diagnostic studies. His examination revealed positive signs for carpal tunnel syndrome and wasting of the thenar muscles. Dr. Stempler reviewed EMG and nerve conduction studies conducted in 2003 and 2005 that showed Claimant to suffer from bilateral carpal tunnel syndrome and degeneration of the median nerve.

Dr. Stempler could not comment on Claimant's condition in 1997. He opined that assuming the adjudicated fact she had fully recovered as of October 20, 1997, the date on which Claimant's benefits were terminated, then she had suffered a recurrence as of January 3, 2005, when Dr. Stempler examined Claimant. Claimant's bilateral carpal tunnel syndrome had returned. There was objective evidence of a physical change in her condition in the form of muscle wasting and in the diagnostic tests. Dr. Stempler testified that Claimant had some improvement after her

carpal tunnel releases but that the symptoms returned. He explained that even after a release, the scar tissue and nerve damage will continue to cause symptoms. Dr. Stempler concluded that Claimant was disabled and that the disability was causally related to the work injury.

Employer introduced the deposition testimony of Scott H. Jaeger, M.D., a board-certified orthopedic surgeon. Dr. Jaeger testified that he performed his third examination of Claimant on August 2, 2005. In conjunction with his examination, Dr. Jaeger reviewed the reports from his two previous evaluations of Claimant, her medical records and her history. Dr. Jaeger testified that in comparison with his previous examination in 1997, there was no evidence that Claimant's condition had changed. Dr. Jaeger testified that a review of the 2003 and 2005 EMG and nerve conduction studies provided only minimal evidence of carpal tunnel syndrome. Dr. Jaeger opined that Claimant had fully recovered from her work injuries in 1997 and was still fully recovered when he examined her on August 2, 2005.

Employer also introduced an affidavit from its insurer stating that on September 1, 2005, Claimant was paid the penalty awarded in WCJ Simmons' decision dated January 31, 2005. However, payment of the interest awarded by the WCJ was not made until March 22, 2006.

The WCJ reinstated Claimant's benefits and awarded Claimant a 50 percent penalty. The WCJ found Claimant to be credible, and he found Dr. Stempler to be more credible and persuasive than Dr. Jaeger. The WCJ concluded that Claimant had experienced a worsening of her work-related injury subsequent to the termination of her benefits in the form of muscle wasting,

**2.** The hearing on the consolidated petitions was conducted by WCJ Robert Simmons, the same WCJ who entered the January 31, 2005, order.

pain, tingling and numbness in her thumb, index, middle and ring fingers. The WCJ also imposed a 50 percent penalty on Employer for its inordinate delay in complying with his January 31, 2005, penalty order. Employer appealed to the Board, and it affirmed. Employer now petitions for review.[3]

Employer raises three issues for this Court's review. First, Employer contends that Claimant's reinstatement petition is barred by the doctrine of *res judicata* or collateral estoppel. Next, Employer argues that the conclusion that Claimant suffered a recurrence is not supported by competent medical evidence. Finally, Employer contends that WCJ Simmons erred in awarding penalties. We consider these issues *seriatim*.

■ With respect to its invocation of *res judicata*, Employer notes that Claimant testified that she has continued to have the same symptoms since she stopped working for Employer in 1994. Because Claimant was found to be fully recovered on October 20, 1997, Employer contends that Claimant is attempting to relitigate the termination petition, which is barred by *res judicata*.

■ The doctrine of *res judicata* prevents the relitigation of claims and issues that have previously been decided. *Temple University v. Workers' Compensation Appeal Board (Parson and Supersedeas Fund)*, 753 A.2d 289, 291 (Pa.Cmwlth. 2000). The doctrine of *res judicata* encompasses two related, but distinct principles: technical *res judicata*, which is sometimes called claim preclusion; and collateral estoppel, which is sometimes called issue preclusion. *Id.* Claim preclusion prevents a future suit between the

same parties on the same cause of action after final judgment is entered on the merits of the action. *PMA Insurance Group v. Workmen's Compensation Appeal Board (Kelley)*, 665 A.2d 538 (Pa.Cmwlth. 1995). Collateral estoppel prevents relitigation of an issue of fact or law between the same parties upon a different claim or demand. *Fiore v. Commonwealth of Pennsylvania (Department of Environmental Resources)*, 96 Pa.Cmwlth.477, 508 A.2d 371, 374 (1986). As this Court has explained, it is often difficult to distinguish between *res judicata* or collateral estoppel. *Id.* at 483, 508 A.2d 371. However, the "important thing for the Court to consider is whether the *ultimate and controlling issues* have been decided in a prior proceeding in which the parties actually had an opportunity to appeal and assert their rights." *Id.* (emphasis added).

■ To have her benefits reinstated after a termination, Claimant had to prove a causal connection between her current condition and the prior work-related injury by establishing that (1) her work injury has recurred and (2) her physical condition has changed since the prior decision. *Taylor v. Workers' Compensation Appeal Board (Servistar Corp.)*, 883 A.2d 710, 713 (Pa.Cmwlth.2005). By contrast, in a termination proceeding, the employer bears the burden of proving that the claimant's disability has ceased or that any current disabilities are unrelated to the work injury. *Gillyard v. Workers' Compensation Appeal Board (Pennsylvania Liquor Control Board)*, 865 A.2d 991, 995 (Pa.Cmwlth. 2005).

The ultimate and controlling issue decided in Employer's termination petition was

---

**3.** This Court's review of an order of the Board is limited to determining whether the necessary findings of fact were supported by substantial evidence, constitutional rights were violated, or errors of law were committed.

*Borough of Heidelberg v. Workers' Compensation Appeal Board (Selva)*, 894 A.2d 861, 863 n. 3 (Pa.Cmwlth.2006), *aff'd*, 593 Pa. 174, 928 A.2d 1006 (2007).

whether Claimant was fully recovered from her work-related injury, and she was found to be fully recovered as of October 20, 1997. The ultimate controlling issue in Claimant's reinstatement petition, the matter before us, is whether her work injury recurred as of January 3, 2005. These issues are not identical because they involve factual questions about Claimant's condition at two unrelated time periods. In short, Claimant's reinstatement petition is not barred by *res judicata* or collateral estoppel.

Next, Employer contends that the WCJ erred in finding that Claimant suffered a recurrence of her work-related injury because the evidence does not support this finding. First, Employer argues that Claimant's testimony that her symptoms have persisted since 1994 defeats her claim that her condition has changed since October 20, 1997, the date on which she was found to be fully recovered. Second, Employer argues that Claimant's medical expert was incompetent because he had no personal knowledge of Claimant's condition in 1997, when her benefits terminated.

■■■■ A claimant seeking reinstatement of benefits following a termination carries a heavy burden because the claimant has been adjudicated to be fully recovered. This Court has previously explained:

> Because the termination order effectively establishes that the claimant has fully recovered from the work injury, the claimant must prove that *her disability has increased or recurred* since the prior decision *and that her physical condition has changed* in some manner.

*Taylor*, 883 A.2d at 713 (emphasis added). Moreover, a claimant seeking a reinstatement of benefits must prove this change in physical condition "by precise and credible evidence of a more definite and specific nature than that upon which initial compensation was based." *Simeone v. Workmen's Compensation Appeal Board (United Parcel Service)*, 135 Pa.Cmwlth. 356, 580 A.2d 926 (1990). The change in physical condition must be shown to have occurred after the date of her total physical recovery.[4]

In this case, Claimant was found to be fully recovered from her work-related injury as of October 20, 1997. Claimant filed the instant reinstatement petition on February 2, 2005, alleging that her work inju-

---

4. Requiring a claimant to introduce medical evidence that her condition has changed after a termination of benefits prevents a claimant from repeatedly attacking what the claimant considers to be an erroneous decision by filing endless reinstatement petitions, using the same evidence, in hope that a WCJ will finally decide in her favor.

Indeed, this is consistent with an employer's burden in a termination proceeding. The Pennsylvania Supreme Court recently explained as follows:

> In order to terminate benefits on the theory that a claimant's disability has reduced or ceased due to an improvement of physical ability, it is first necessary that the employer's petition be based upon medical proof of a change in the claimant's physical condition. Only then can the workers' compensation judge determine whether the change

in physical condition has effectuated a change in the claimant's disability, *i.e.*, the loss of his earning power. Further, by natural extension it is necessary that, where there have been prior petitions to modify or terminate benefits, the employer must demonstrate a change in physical condition since the last disability determination. Absent this requirement a disgruntled employer (or claimant) could repeatedly attack what he considers an erroneous decision of a referee by filing petitions based on the same evidence *ad infinitum*, in the hope that one referee would finally decide in his favor.

*Lewis v. Workers' Compensation Appeal Board (Giles & Ransome, Inc.)*, 591 Pa. 490, 497–498, 919 A.2d 922, 926 (2007) (internal quotations omitted).

ry had recurred as of January 3, 2005. Thus, Claimant had the burden to prove that her disability had recurred and that her physical condition has changed after the time that she was found to be fully recovered, i.e., October 20, 1997.

It is true that Claimant testified that her symptoms have persisted since 1994. However, she also testified that her carpal tunnel syndrome began to get worse in 2002; by 2004, she experienced even more pain, numbness and tingling in her thumb, index, middle, and ring fingers in both hands.[5] Her testimony on worsening was credited by the WCJ. Accordingly, her statement that she has never been symptom-free does not defeat her claim that her condition changed after her benefits terminated.

Employer contends that Dr. Stempler's opinion was not competent to support a finding of a physical change because Dr. Stempler could not testify from his personal observation what Claimant's condition had been in 1997.[6] Dr. Stempler assumed the adjudicated fact that she was recovered in 1997. Based on his diagnosis in 2005, he opined that her condition had changed.

This Court has recently explained, in the context of a reinstatement of benefits following a termination, that a medical expert who bases his or her opinion on a factual assumption that is inconsistent with a previously decided medical fact may be ruled legally incompetent. Taylor, 883 A.2d at 713. In Taylor, the claimant's medical expert opined that the claimant's plantar fasciitis had recurred, based on an assumption that the claimant had been found fully recovered in the earlier termination proceeding. The Board affirmed the WCJ's finding that the claimant's medical expert was not competent to establish a recurrence and physical change since he did not personally know the claimant's condition when benefits were terminated. This Court reversed. Although noting "[w]here an expert's opinion is based on an assumption that is contrary to the established facts of record, that opinion is worthless," this principle was found not applicable. Taylor, 883 A.2d at 713. We explained:

> In this case [the medical expert's] testimony is not based on an assumption that is inconsistent with [the WCJ's] determination that [the claimant] recovered from her work injury in July 2000. . . . His opinion that [the claimant] experiences exacerbations and remission of plantar fasciitis is entirely consistent with the termination decision, as a remission is characterized by an abatement or cessation of symptoms.

Id. at 713–714. Stated otherwise, a claimant can show a change in physical condition by showing a return of symptoms previously found to have ceased.

Here, Dr. Stempler testified that he had no direct knowledge of Claimant's condition prior to his seeing her in 2005, and he could not specify when her carpal tunnel syndrome returned. However, Dr. Stempler opined unequivocally that, assuming she had fully recovered in 1997, Claimant's bilateral carpal tunnel syndrome had recurred because it was present in 2005 when he saw her, a condition supported by objective evidence. The difference between her condition in 1997, i.e.,

---

5. In the termination proceeding, Claimant did not testify to pain in her ring finger.

6. A determination of whether medical evidence is competent is a conclusion of law reviewable on appeal. Pryor v. Workers' Compensation Appeal Board (Colin Service Systems), 923 A.2d 1197, 1203 (Pa.Cmwlth.2006). Medical evidence is competent if it is sufficiently definite and unequivocal to render it admissible. Id.

the absence of carpal tunnel syndrome, and in 2005, *i.e.,* the presence of carpal tunnel syndrome, constitutes a physical change in her condition. Dr. Stempler was not required to see Claimant in 1997 in order to be competent to testify that her condition changed after 1997. His 2005 examination showed her physical condition to be different from how it was adjudicated as of 1997.

Employer's final issue concerns the award of penalties. Employer argues that it is not clear whether the penalty is on top of a previously awarded 50 percent penalty or a new penalty on the delayed payment of interest on the medical bill. Employer argues that if the penalty is on top of the previously awarded penalty, then it exceeds the maximum 50 percent authorized in the Act. In the alternative, Employer argues that if the penalty award is a penalty on the delayed payment of interest on the medical bill, the award violates Employer's due process rights because it failed to receive notice and a hearing on the payment of interest.

 Orders to pay workers' compensation benefits have immediate effect. *City of Philadelphia v. Workers' Compensation Appeal Board (Sherlock),* 934 A.2d 156, 161 (Pa.Cmwlth.2007). Section 430(b) of the Act provides, in relevant part, as follows:

> Any insurer or employer who terminates, decreases or refuses to make any payment provided for in the decision without filing a petition and being granted a supersedeas shall be subject to a penalty as provided in Section 435 . . .

77 P.S. § 971(b). Thus, an award must be paid immediately, unless the WCJ's order is stayed. With respect to the amount of penalties, they are discretionary. Section 435(d)(i) of the Act provides as follows:

> Employers and insurers *may be penalized* a sum not exceeding ten percentum of the amount awarded and interest accrued and payable: provided, however, that such penalty may be increased to fifty percentum in cases of unreasonable and excessive delays. Such penalty shall be payable to the same persons to whom the compensation is payable.

77 P.S. § 991(d)(i). The amount of penalty awarded will not be set aside except where there has been an abuse of discretion. *City of Philadelphia,* 934 A.2d at 160.

 In this case, Employer was ordered to pay Claimant a 50 percent penalty "plus statutory interest . . . from October 11, 2001 through March 8, 2004. . . ." WCJ Decision, January 31, 2005, at 3; R.R. 103a. To avoid the imposition of new penalties, Employer had to pay to Claimant the penalty award plus interest in a timely manner. When Employer did not do so, Claimant filed another penalty petition seeking a 50 percent penalty for Employer's failure to comply with the WCJ's January 2005 order. It was not until September 1, 2005, that Employer paid the penalty, and it was not until March 22, 2006, that Employer paid the interest.

 Contrary to Employer's assertion, it is clear that the WCJ here assessed a 50 percent penalty on the amount awarded in the 2005 Decision, which consists of both the prior penalty and the interest.[7] We

---

**7.** We reject Employer's argument that the award violates its due process rights because it did not know that the penalty petition was based on non-payment of interest. Claimant's penalty petition sought a penalty for failing to comply with the WCJ's order, which included both the 50 percent penalty and stat-

utory interest. Employer's so-called lack of notice is nothing more than a failure to read completely both the penalty petition and the WCJ's order, on which there was a hearing. Employer's due process argument lacks merit.

disagree with Employer that a penalty on the late payment of a penalty exceeds the maximum 50 percent penalty authorized by the Act. An employer that fails to timely comply with an order to pay benefits, whether it is a penalty or otherwise, runs the risk of a new 50 percent penalty. *See City of Philadelphia,* 934 A.2d at 161. A holding to the contrary would eliminate a claimant's ability to enforce an award of penalties. We hold that the Board appropriately affirmed the WCJ's award of penalties.

Based on the foregoing, we affirm the Board.

### ORDER

AND NOW, this 29th day of August, 2008, the order of the Workers' Compensation Appeal Board dated July 6, 2007, in the above-captioned matter is hereby AFFIRMED.