IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Bunner, : 
               Petitioner : 
  : No. 25 C.D. 2016
          v. : 
  : Submitted: July 15, 2016
Workers' Compensation Appeal : 
Board (Delcora), : 
               Respondent : 


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                      FILED: January 20, 2017


      Robert Bunner (Claimant) petitions for review of the December 16, 2015 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of the Workers' Compensation Judge (WCJ) denying his review and reinstatement petitions.

      On February 9, 2010, while in the course and scope of his employment with Delcora (Employer) as a truck driver, Claimant was involved in a motor vehicle accident and suffered a work-related injury to his lower back region. Through a Notice of Temporary Compensation Payable, and later a Notice of Compensation Payable (NCP), Employer accepted liability for a strain/sprain to Claimant's low back. (WCJ's Findings of Fact Nos. 1-3.)

Employer subsequently filed a termination petition and, on May 25, 2012, a WCJ granted that petition, concluding that Claimant had fully recovered from his strain/sprain injury as of June 25, 2010. (Reproduced Record (R.R.) at 4a-11a.) Critically, the WCJ determined that Claimant's expert's testimony and a September 27, 2010 MRI failed to establish that the following condition was work related: degenerative disc disease, disc bulging, and lateral recess narrowing located in Claimant's lower lumber spine at the L3-4 and L4-5 levels. (R.R. at 4a-11a.) Thereafter, the Board affirmed, and this Court dismissed Claimant's petition for review on July 22, 2013. (WCJ's Findings of Fact Nos. 4-6.)

Meanwhile, Claimant filed the instant reinstatement petition on June 18, 2013, and a review petition on December 27, 2013. In these petitions, Claimant alleged that as of May 1, 2013, he suffered a worsening of his low back injury and that the NCP contained an incorrect description of his work-related injury. Employer filed a timely answer denying the material allegations, and a WCJ convened a hearing. (WCJ's Findings of Fact Nos. 7-9.)

Claimant testified that on February 9, 2010, he suffered injuries to his lower back when he stopped Employer's truck for a school bus and a vehicle rear-ended him. Claimant stated that, since this incident, the pain in his back has never stopped and that on January 28, 2011, he began seeing Christian Fras, M.D., an orthopedic surgeon. Claimant said that Dr. Fras performed surgery on May 3, 2011. According to Claimant, this surgery provided him with some relief but he continues to suffer constant pain in his low back, which radiates to his legs. Claimant testified that he is unable to perform the duties of his pre-injury job but said that he might be able to perform a light-duty job. (WCJ's Finding of Fact No. 10.)

2

Dr. Fras testified that he first treated Claimant on January 28, 2011, and understood that Claimant was injured on February 9, 2010, as a result of a motor vehicle accident. Dr. Fras stated that an MRI taken on September 27, 2010, revealed degeneration of the L3-4 and L4-5 discs with narrowing at the L4 level, and that Claimant had never been treated for back pain prior to the accident. According to Dr. Fras, a discogram confirmed that Claimant's L4-5 disc was causing Claimant's radicular pain and, consequently, he surgically fused Claimant's L4-5 disc on May 3, 2011. Dr. Fras explained that Claimant continued to complain of back pain during a visit on January 31, 2014. Ultimately, Dr. Fras opined that Claimant's work injury aggravated his pre-existing L3-4 and L4-5 degenerative disease and was a substantial contributing factor resulting in the L4-5 fusion surgery. Dr. Fras further opined that Claimant's degenerative disease was relatively asymptomatic prior to the work injury and that Claimant's work injury caused the discs to become progressively worse to the point where Claimant had to undergo lumbar fusion surgery. (WCJ's Finding of Fact No. 11.)

Employer presented the testimony of Neil Kahanovitz, M.D., an orthopedic surgeon. Dr. Kahanovitz stated that Claimant's work injury did not aggravate the pre-existing degenerative changes in his lumbar spine. Dr. Kahanovitz also stated that the May 3, 2011 lumbar fusion surgery was not casually related to Claimant's employment injury. According to Dr. Kahanovitz, Claimant had normal strength and sensation in the lower extremities and could return to work without restrictions. (WCJ's Finding of Fact No. 12.)

In a decision dated December 4, 2014, the WCJ found Claimant's testimony to be credible, namely Claimant's statements that he has had constant pain

at varying levels since the time of his employment injury and, as a result of this pain, he is unable to return to his former position. (WCJ's Finding of Fact No. 13.)

With respect to the parties' experts, the WCJ found as follows:

14. [Dr. Fras] is credible and convincing as to his diagnosis and determination that Claimant has had constant low back pain since the time of the February 9, 2010 employment incident and that the degeneration findings of the MRI study on September 27, 2010, indicate L3-4-5 discs with narrowing at [the] L4 level. Dr. Fras notes that in his opinion Claimant's symptom of pain as a result of the February 9, 2010 employment injury aggravated and made symptomatic the pre-existing degenerative conditions. *The [WCJ] also notes that when considering Dr. Fras' testimony it was never his opinion that Claimant had ever fully recovered from the aggravating symptoms caused by the February 9, 2010 employment injury*.

15. [Dr. Kahanovitz] is convincing that from the standpoint of Claimant's lumbar strain injury, Claimant could return to work without restrictions. Dr. Kahanovitz is not convincing that the work injury did not aggravate the pre-existing degenerative changes in Claimant's lumbar spine. This [WCJ] has accepted the opinions of Dr. Fras with regard to these conditions.

(WCJ's Findings of Fact Nos. 14-15) (emphasis added).

Although the WCJ accepted the medical opinions of Dr. Fras as credible, the WCJ felt constrained to conclude that Dr. Fras's testimony was legally incompetent. Citing *Namani v. Workers' Compensation Appeal Board (A. Duie Pyle)*, 32 A.3d 850 (Pa. Cmwlth. 2011), the WCJ determined that Dr. Fras did not offer any testimony accepting the fact that Claimant had fully recovered from his work-related injury and, thus, his expert opinions failed to establish that Claimant suffered from a physical condition that has changed or worsened since his benefits were terminated. Based upon this reasoning, the WCJ concluded that Claimant failed

4

to adduce sufficient evidence to support his reinstatement and review petitions as a matter of law. Accordingly, the WCJ denied these petitions. (WCJ's Conclusions of Law Nos. 2-3.)

Claimant appealed, and the Board affirmed. The Board concluded that Dr. Fras's testimony was legally inadequate to support a reinstatement of benefits because "he did not explain how Claimant's condition had changed, or his disability had recurred or increased, after termination of benefits on June 25, 2010." (Board's Decision at 10.) The Board also noted that Claimant's work injury had previously been established as a low back strain/sprain; a WCJ concluded in the termination proceedings that Claimant had fully recovered from that injury as of June 25, 2010; and Claimant had presented evidence in the prior termination proceedings regarding degenerative disc conditions, but the WCJ rejected that evidence as not credible and found that those conditions were not causally related to the work injury. With respect to the WCJ's denial of Claimant's review petition, the Board succinctly explained:

> Claimant was aware of any alleged degenerative disc conditions, including aggravations, during the litigation of the prior termination petition, and he even presented some evidence in that regard that was simply rejected by the WCJ [in the termination proceedings]. [Claimant] therefore cannot now argue that his work injury includes that condition in an attempt to relitigate matters already resolved by [the] WCJ [in the termination proceedings].

*Id.* at 8-9.

Before this Court,[1] Claimant does not challenge the denial of his review petition and, instead, contends that the WCJ erred in denying his reinstatement

---

[1] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether findings of fact were supported by substantial **(Footnote continued on next page…)**

petition. For support, Claimant points to excerpts of Dr. Fras's testimony and argues that, in these passages, Dr. Fras acknowledged and accepted the fact that Claimant had recovered from a low back sprain/strain. Claimant also contends that Dr. Fras's testimony established that Claimant's lumbar strain injury recurred, worsened, and/or was aggravated after his benefits were terminated. For these reasons, Claimant argues that *Namani* is inapplicable and that he met his burden of proof for a reinstatement. We disagree.

Section 413 of the Workers' Compensation Act provides for reinstatement of benefits when compensation benefits have been terminated.[2] "A claimant seeking reinstatement of benefits following a termination carries a heavy burden because the claimant has been adjudicated to be fully recovered." *National Fiberstock Corporation (Greater New York Mutual Insurance Company) v. Workers' Compensation Appeal Board (Grahl)*, 955 A.2d 1057, 1062 (Pa. Cmwlth. 2008). "[T]he claimant must prove that [his] disability has increased or recurred since the prior decision and that [his] physical condition has changed in some manner." *Taylor v. Workers' Compensation Appeal Board (Servistar Corporation)*, 883 A.2d 710, 713 (Pa. Cmwlth. 2005). In satisfying this burden, "[t]he claimant must prove a change in his physical condition by precise and credible evidence of a more definite and specific nature than that upon which initial compensation was based and *the change must be shown to have occurred after the date of the claimant's total physical*

---

**(continued…)**

evidence. *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

[2] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §772.

6

*recovery.*" *Namani*, 32 A.3d at 854 (citation and internal quotation marks omitted) (emphasis added).

While the WCJ, as fact finder, has exclusive power over questions of credibility and evidentiary weight, a WCJ's credibility determination cannot serve to preclude this Court from determining whether an expert's testimony is legally incompetent. *Potere v. Workers' Compensation Appeal Board (Kemcorp)*, 21 A.3d 684, 690 (Pa. Cmwlth. 2011); *Stalworth v. Workers' Compensation Appeal Board (County of Delaware)*, 815 A.2d 23, 29-30 (Pa. Cmwlth. 2002). This is because "[t]he question of the competency of evidence is one of law and fully subject to our review." *Namani*, 32 A.3d at 854 (citation and internal brackets omitted). "[I]t is well established that the opinion of a medical expert must be viewed as a whole, and that inaccurate information will not defeat that opinion unless it is dependent on those inaccuracies." *Id.* at 854-55. "Where an expert's opinion is based on an assumption that is contrary to the established facts of record, that opinion is incompetent." *Id.*

In *Namani*, the employer accepted liability for the claimant's work-related accident in a NCP, which described the injury as left arm and hand contusions. After the WCJ granted the employer's termination petition, the claimant filed a reinstatement petition, alleging a worsening of his condition, specifically that he developed cervical injuries. The WCJ determined that the testimony of the claimant's expert, Andrew Freese, M.D., was legally insufficient because he failed to appropriately consider the fact that the claimant had fully recovered from his work-related injury and specifically explain how the injury had recurred. The WCJ also determined that the results of an EMG study indicating that the claimant had sustained cervical injuries were available to Dr. Freese prior to the termination

proceedings. Accordingly, the WCJ denied the claimant's reinstatement and review petitions and the Board affirmed.

On appeal, this Court also affirmed, concluding that the testimony of Dr. Freese was legally incompetent. We reasoned:

> A review of Dr. Freese's entire deposition testimony reveals that Dr. Freese did not address or consider the termination of Claimant's workers' compensation benefits due to a total recovery of his work-related left hand and left arm contusions . . . . Because Dr. Freese did not offer any testimony with regard to Claimant's full recovery of the accepted work-related injuries, nowhere in Dr. Freese's testimony does he relate that Claimant's physical condition has changed in some manner since the termination of Claimant's benefits. Instead, Dr. Freese opines that Claimant not only suffered hand and arm injuries, but that he suffered undiagnosed cervical injuries on the date of his work-related . . . injury. Dr. Freese specifically testified that it was clear that a nerve compression in the cervical spine can manifest itself with significant hand symptomatology and that there was no question that a significant component of Claimant's hand symptoms were related to his cervical spine injuries. Thus, Dr. Freese essentially testified that there has been no change in Claimant's condition . . . which contradicts the WCJ's [decision] granting Employer's Termination Petition based on a finding of full recovery. Accordingly, Dr. Freese's opinions on causation are contrary to the established facts of record and are based on inaccuracies. As such, the WCJ did not err by finding Dr. Freese's opinions on causation legally insufficient to support a reinstatement of Claimant's workers' compensation benefits.

*Id.* at 855.

At its core, *Namani* stands for the proposition that an expert's testimony is incompetent when it does not explain how a resolved injury has later recurred or worsened, but instead is based on the theory that a general medical condition that is known to exist at the time of the termination proceedings progresses through a

8

manifestation of new or worsening symptoms or ailments. In this situation, the expert's testimony never actually accepts that the work-related injury has resolved or healed, but rather, is grounded on the notion that the origin of the allegedly recurring injury was diagnostically present and able to be claimed as an injury prior to or during the termination proceedings. Essentially, the expert in this context is asserting a misdiagnosed or overlooked injury under the label of a recurring or a worsening of a work-related injury, which has the effect of defeating or disregarding the WCJ's conclusion that the claimant had fully recovered from his work-related injury as a matter of law. When understood in this light, the facts of this case fit neatly within our holding in *Namani*.

Here, Claimant sustained a low back sprain/strain on February 9, 2010, and the WCJ concluded that Claimant had fully recovered from this injury in a decision dated May 25, 2012. In making this determination and granting Employer's termination petition, the WCJ found as fact:

> Records of Premier Imaging established that a MRI of Claimant's lumbar spine on September 27, 2010, showed the presence of degenerative disc disease at the levels of L3-4 and L4-5, very mild disc bulging, lateral recess narrowing at the levels of L3-4 and L4-5 with relationships to a disc contour abnormality and very mild facet hypertrophy, and impingement upon the nerve root at the level of L4 right within the lateral recess. Records at Premier Imaging established that Claimant's clinical history at the time of the MRI was that of pain after an injury, [however, the records] did not establish that any of the conditions on the MRI film had a nexus to Claimant's work injury . . . .

(R.R. at 7a-8a.) Clearly, the fact that Claimant had a degenerative disc disease, specifically at the L3-4 and L4-5 levels, was known to Claimant and his expert during

9

the termination proceedings and Claimant offered evidence to suggest that this condition was work-related, but the WCJ rejected this evidence as not credible.

During the reinstatement and review proceedings, Claimant testified that the pain in his low back has never stopped and that he "cannot go back [to work] because of the low back pain." (R.R. at 89a, 102a.) Dr. Fras testified that Claimant was referred to him for evaluation and treatment of low back pain complaints. (R.R. at 110a.) When asked what type of information he relied upon in order to determine the nature of Claimant's back pain and the appropriate treatment, Dr. Fras stated, in pertinent part, as follows:

> His MRI of 9/27/2010 I reviewed, and I noted there to be degeneration of the discs at L3-4 and L4-5 with facet arthropathy. So the facet joints are small joints in the posterior part of the spine, the back of the spine, and these were somewhat arthritic.
>
> I also noted an element of stenosis that I characterized as mild.
>
> Q. That's narrowing?
>
> A. That's right. At L4-5. The impression that I had at that point was that of chronic back pain that could be related to his degenerative changes.

(R.R. at 111a-12a.)

Dr. Fras then stated that he ordered and later reviewed an MRI dated February 4, 2011, and observed "loss of disc height and hydration primarily at L4-5" and "to a lesser degree at L3-4" and "degeneration focused on particularly one level in the spine, the L4-5." (R.R. at 114a.) In addition, Dr. Fras explained that "[u]ltimately, the diagnosis for which I operated on [Claimant] is that of an aggravation of his lumbar degenerative disc disease," noting that Claimant "already

10

had a compromised disc at the L3-4 level even before [the surgery] was pursued." (R.R. at 121a-22a.) Dr. Fras further testified that Claimant's "disc degeneration, while likely present to some degree before the motor vehicle accident in question, was not symptomatic to the degree that it was eventually thereafter" and that "the grand arc of things is one of gradual decline in function such that [Claimant] ultimately ended up with surgery[.]" (R.R. at 125a.)

Despite all this testimony establishing that Dr. Fras diagnosed Claimant as suffering from a degenerative disc condition that was nearly identical to the one that Claimant had claimed to have suffered in the termination proceedings, Claimant argues that the testimony reproduced below establishes that Dr. Fras accepted the fact that Claimant had fully recovered from his lumbar strain and sprain and that his previous injury had recurred or worsened:

> Q. I want you to assume, as a matter of law in this case, that the injury that originally was attributed to the motor vehicle accident . . . . was a lumbar strain and sprain . . . .
>
> Q. I want you to assume also, Doctor, that upon [a] one-time examination by [Employer's expert in the termination proceedings] on June 25, 2010 . . . he found objectively that there were no signs of a lumbar strain and sprain . . . . [I]s that medically conceivable and acceptable?
>
> A. Yes.
>
> Q. Does that preclude, frankly, the possibility of an exacerbation or a waxing of symptoms at a later date –
>
> A. It does not.
>
> Q. – in the nature of that injury.
>
> A. It does not.

\*     \*     \*

11

Q. Is there a way that you link medically a waxing and waning of a lumbosacral strain and sprain in conjunction with or somehow related [sic] to a degenerative process that was going on in the spine after the accident?

A. I think that, first, it can be initially challenging early in the course of an injury to distinguish between an aggravation of a degenerative condition versus a sprain and strain. That may be challenging on a one-time evaluation.

But even that issue aside, certainly with the passage of time as a consequence of the waxing and waning, and of the condition in total with the sprain and strain, the aggravation of the degenerative condition at the L4-5 level can become evident.

\* \* \*

Q. [I]s it fair to state that within a reasonable degree of medical certainty [that] you believe, assuming that the original injury, and we accept that, was a lumbar strain and sprain, that that recurred and worsened in the way that you've indicated and affected the degenerative disc disease process that pre-existed in his spine.

A. Yes.

(R.R. at 132a-33a, 138a.)

Viewing Dr. Fras's testimony as a whole, we conclude that, akin to the claimant's expert in *Namani*, Dr. Fras basically opined that "Claimant not only suffered [a lumbar strain/sprain], but that he suffered [an] undiagnosed [degenerative disc condition] on the date of his work-related . . . injury." 32 A.3d at 855. In point of fact, Dr. Fras admitted that Claimant's September 27, 2010 MRI, which was taken before the WCJ terminated benefits, revealed the presence of degenerative disc disease at L3-4 and L4-5 levels, and he merely opined that Claimant's symptoms of pain have recessed and increased through time. Akin to the situation in *Namani*, Dr.

12

Fras "specifically testified that it was clear that [degenerative disc disease] can manifest itself with significant [back pain] symptomatology and that there was no question that a significant component of Claimant's [back pain was] related to [lumbar strain/sprain]." *Id.*

In essence, Dr. Fras testified that Claimant had suffered from degenerative disc disease prior to the termination proceedings, that this condition was not properly diagnosed at that time, and that further degeneration occurred through time. Yet, and most importantly, Dr. Fras failed to offer any testimony explaining how Claimant's lumbar strain/sprain had dissipated and then later recurred by manifesting itself into a new or different type of injury. In other words, although Dr. Fras assumed in a hypothetical model that Claimant's symptomatic presentation of pain "waxed" and "waned," he conceded that the underlying medical condition, degenerative disc disease, was diagnostically present prior to the termination proceedings and testified that this condition existed prior to the accident and continues to exist, albeit with a more severe symptomology. In short, Dr. Fras did not provide any testimony to substantiate the notion that Claimant had fully recovered from his lumbar strain/sprain and that this lumbar strain/sprain had recurred into a discrete and previously unknown injury. As the WCJ and the Board correctly concluded, under *Namani*, this failure on Dr. Fras's part renders his testimony legally incompetent to support a reinstatement of benefits.

In addition, we note that a "claimant must establish a causal connection between his current condition and the prior work-related injury in order to have benefits reinstated." *Pieper v. Ametek-Thermox Instruments Division*, 584 A.2d 301, 305 (Pa. 1990). Here, the WCJ in the termination proceedings already concluded that Claimant failed to establish that his degenerative disc disease was work related, and

13

Claimant's current degenerative disc disease is not a materially distinct injury than the one he was known to have suffered from prior to the termination proceedings. Pursuant to the doctrine of collateral estoppel, Claimant cannot now contend in these reinstatement proceedings that his present diagnosis of aggravated degenerative disc disease has a causal connection to his work-related injury. *See Namani*, 32 A.3d at 858 (concluding that under principles of collateral estoppel, the claimant could not relitigate the issue of whether he suffered from cervical injuries during a reinstatement proceeding because the claimant knew that he had such injuries prior to the termination proceedings and, therefore, "*should have litigated* the issue of his cervical injuries during the termination proceedings.") (emphasis in original).

Therefore, having concluded that the WCJ properly determined that Dr. Fras's testimony was inadequate as a matter of law, we conclude that the Board did not did err in affirming the WCJ's denial of Claimant's reinstatement petition.


_____
PATRICIA A. McCULLOUGH, Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Bunner,                           :
               Petitioner             :
                             :    No. 25 C.D. 2016
               v.                        :
                             :
Workers' Compensation  Appeal            :
Board (Delcora),                         :
               Respondent             :

## ***ORDER***

      AND NOW, this 20th day of January, 2017, the December 16, 2015 order of the Workers' Compensation Appeal Board is affirmed.


                                 _____
                                 PATRICIA A. McCULLOUGH, Judge