Patricia **SWEENEY**, Petitioner,

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (WHITMAN'S CHOCOLATES), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 1997.

Decided March 25, 1997.

Publication Ordered May 29, 1997.

Robert D. Erickson, Philadelphia, for petitioner.

Brian J. Smith, Blue Bell, for respondent.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, KELLEY and LEADBETTER, JJ.

McGINLEY, Judge.

Patricia Sweeney (Claimant) appeals from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's [1] decision granting the suspension petition of Whitman's Chocolates, Inc. (Employer). We affirm in part and reverse in part.

Claimant sustained a work-related injury to her right knee on April 25, 1991, while working as a material analyst for Employer. Pursuant to a notice of compensation payable, Claimant received temporary total disability benefits beginning on May 31, 1991. Pursuant to a supplemental agreement dated November 27, 1991, Claimant's benefits were suspended from August 13, 1991, to October 9, 1991, when she returned to work without loss of earnings. Benefits were reinstated on October 10, 1991, due to a recurrence of Claimant's disability.

In March of 1992, Employer petitioned for a suspension alleging that Claimant had returned to her pre-injury position without a loss of earnings as of December 16, 1991. Employer alleged in the petition that benefits were reinstated for a period from February 11, 1992, to February 18, 1992, at which time, Claimant returned to work. Employer also alleged in the petition that Claimant's counsel failed to respond to Employer's request for the execution of a supplemental agreement, necessitating the suspension peti-

tion. Claimant answered and admitted that she returned to work on December 16, 1991, until February 10, 1992, that she received benefits from February 11, 1992, to February 17, 1992, and that she returned to work on February 18, 1992. Claimant requested verification that she did not have a loss of earnings and that all medical bills were paid.

Employer presented the deposition testimony of Evelyn Walker (Walker), manager of loss prevention and safety, and designated records custodian for Employer. Walker confirmed the periods which Claimant worked since her April 25, 1991, work injury, and informed the referee of Claimant's salary.

Claimant testified that she returned to her pre-injury position, which was a salaried position and that she always returned without a loss of earnings. Claimant stated she executed a supplemental agreement, dated April 15, 1992, which reflected a suspension of benefits as of December 16, 1991, a reinstatement of benefits as of February 11, 1992, and a suspension of benefits as of February 18, 1992. While Claimant did not remember signing the agreement, she agreed it was accurate. Claimant also related that she incurred four medical bills for diagnostic studies after she returned to work on February 18, 1992, and noted that she did not present the bills to Employer until sometime in 1993.

The parties agreed that there were two medical bills outstanding at the time that the suspension petition was filed, but that the bills were paid by Employer in October of 1992. Claimant never petitioned for penalties.

The referee granted Employer's suspension petition based upon the following pertinent findings of fact:

9. Claimant's concern as to the medical bills was as to four bills for diagnostic studies which were incurred after she returned to work on February 18, 1992, after Defendant filed the instant Suspension Petition and after Claimant filed her Answer.

---

1. Referees are now called Workers' Compensation Judges under the new amendments to Section 401 of The Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736 *as amended*, 77 P.S. § 701. *See* Section 14, Act 44, Act of July 2, 1993, P.L. 190. Because this action was commenced prior to the effective date of the amendments, this Court will refer to Marc A. Weinberg as a referee and not as a Workers' Compensation Judge.

Moreover, Claimant did not present the bills to Defendant until sometime in 1993.

. . . .

11. The Judge accepts the testimony of Ms. Walker as credible and persuasive and finds that Claimant returned to work on December 16, 1991 without loss of earnings, that Claimant's disability recurred as of February 11, 1992 and that Claimant always returned to her pre-injury position.

12. The Judge also accepts the testimony of Claimant that she executed a Supplemental Agreement sometime in 1992 which would have resolved this matter, but that Claimant's counsel failed and refused to allow Defendant to file the Supplemental Agreement with the Bureau.

Referee's Decision, August 22, 1994, Findings of Fact Nos. 9, 11 and 12, at 3; Reproduced Record (R.R.) at 10a.

The Board affirmed the referee's decision, concluding:

Claimant argues that she is entitled to a reinstatement of benefits once the employer terminated operations in 1993. The burden of proof with regard to that reinstatement was on Claimant to prove that at the time employment ended Claimant continued to suffer effects of the work injury. *Pieper v. Workmen's Compensation Appeal Board (Ametek–Thermox Instruments Division)*, 526 Pa. 25, 584 A.2d 301 (1990). There was no testimony in the record that at the time Claimant was laid off her work injury continued. Because of the passage of time that fact cannot be assumed. *Pieper.*

Board's Decision, October 23, 1995, at 2; R.R. at 3a.

■■■ On appeal Claimant contends: 1) that the referee erred in determining that Employer was entitled to a suspension of benefits; 2) that the referee failed to make necessary findings of fact and conclusions of law; and 3) that the Board exceeded its scope of review by assuming the referee's role as finder of fact. Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed and whether all necessary findings of fact are supported by

substantial evidence. *Boehm v. Workmen's Compensation Appeal Board (United Parcel Services)*, 133 Pa.Cmwlth.455, 576 A.2d 1163 (1990). Although a claimant may continue to suffer from a work-related injury if there is no loss of earning power, compensation benefits must be suspended. *Scobbie v. Workmen's Compensation Appeal Board (Greenville Steel Car Company)*, 118 Pa.Cmwlth. 424, 545 A.2d 465 (1988), *petition for allowance of appeal denied*, 522 Pa. 607, 562 A.2d 829 (1989).

■■■ In the present controversy, it is undisputed that Claimant returned to her pre-injury job without a loss of earnings on December 16, 1991, and again on February 18, 1992. However, the question remains whether Claimant's compensation benefits should be reinstated because of Employer's plant closing on May 27, 1993. We note that:

A suspension is warranted under the [Act] where a claimant has a residual physical impairment attributable to a work-related injury but is receiving wages equal to or in excess of what the claimant had earned in his pre-injury job. *Diffenderfer v. Workmen's Compensation Appeal Board (Rabestos Manhatten, Inc.)*, 651 A.2d 1178 (Pa.Cmwlth.1994), petition for allowance of appeal denied, 540 Pa. 642, 659 A.2d 561 (1995). Although the employer remains liable for the consequences of the work-related injury, there is no longer any 'disability,' i.e., loss of earning power, attributable to the work-related injury. *Id.*

A claimant seeking reinstatement following a suspension of benefits must prove that: (1) through no fault of his or her own, the claimant's disability, i.e., earning power, is again adversely affected by the work-related injury, and (2) the disability which gave rise to the original claims continues. *Pieper v. Ametek–Thermox Instruments*, 526 Pa. 25, 584 A.2d 301 (1990).

'Given the nature of suspension status, which actually *acknowledges* a continuing medical injury, and suspends benefits only because the claimant's earning power is currently not affected by the injury, the testimony of a claimant, alone, . . . satisfies his burden of establishing that his work-

related injury continues.' *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.)*, 537 Pa. 223, 227, 642 A.2d 1083, 1085 (1994) (emphasis in original).

Where a claimant returns to work under a suspension, **with restrictions**, that is, does not return to his or her time-of-injury job, but rather to a modified position, and is subsequently **laid off** and petitions for reinstatement of benefits, the claimant is also entitled to the presumption that his or her disability, i.e., loss of earning power, is causally related to the continuing work injury....

Conversely, where a claimant returns to work under a suspension, without restriction, to his or her pre-injury job, is subsequently laid off, and then petitions for reinstatement, the claimant has the burden to affirmatively establish that it is the work-related injury which is causing his or her present loss of earnings. That is, while the claimant still enjoys the presumption that some work-related medical

injury continues, the claimant is not entitled to the presumption that his or her present *disability*, i.e., loss of earnings, is causally related to that work injury.

*Teledyne McKay v. Workmen's Compensation Appeal Board (Osmolinski)*, 688 A.2d 259, 261–262 (Pa.Cmwlth.1997) (footnote omitted); *See, also, Trumbull v. Workmen's Compensation Appeal Board (Helen Mining Co.)*, 683 A.2d 342 (Pa.Cmwlth.1996). Once a claimant has established that his or her earning power is again adversely affected by the work-related disability and that the work-related injury is causing his or her present loss of earning power, the burden shifts to the employer to prove that suitable work is available. *Trumbull.*

The evidence established that Claimant's job was no longer available after May 27, 1993.[2] The referee here, in granting a *suspension*, necessarily found that Claimant's disability had not ceased entirely. This is supported by Claimant's uncontradicted testimony.[3] Further, Employer failed to pres-

---

2. Robert D. Erickson, Esquire, to Evelyn Walker, manager of loss prevention and safety and designated records custodian for Employer testified that the plant was to be closed but she did not know when:

Q: I may be done, but let me just check one thing.

Now, this is the same Whitmans [sic] Chocolates we've been hearing so much about in the news, isn't it?

A: Yes.

Q: Have they set a date for the plant closure?

A: No.

Deposition of Evelyn Walker, April 14, 1993, at 18; R.R. at 29a.

Two and one half months later, Claimant verified the plant was closed.

Mr. Erickson to the Claimant:

Q: When was the last time you had any earnings from Whitman's Chocolates?

A: Let me—I'm sorry, I just need to clarify that. Do you mean in terms of severance or do you mean just salaried?

Q: When was the last day you worked?

A: May 28th of 1983.

Q: Okay. And what happened on that date?

A: There was a plant closure and I was laid off.

Deposition of Patricia Sweeney (Claimant's deposition), June 29, 1993, at 27; R.R. at 61a.

3. Pat Duffy, Esquire, counsel for Employer, to Claimant:

Q: Now in April of 1991, you sustained an injury to your right knee; is that correct?

A: Yes.

Q: And subsequent to that in May of 1991, you began to receive Workers' Compensation benefits related to the right knee injury?

A: Yes.

Q: And you continued to receive those benefits until approximately, 8–31 of '91 when you returned to work?

A: Yes, approximately.

Q: I'm sorry, If I said 8–31, I meant 8–13–91. And when you returned to work, did you return to work as a raw material planner and analyst?

A: Yes.

Q: Did your job duties remain the same?

A: Basically, I wasn't able to go out into the plant to, you know, to monitor the inventory. So my supervisor okayed it for someone else to go out to do that.

Q: Who was your supervisor?

A: At that time Ed—initially it was John Abbott, and he retired, and then David Colflesh.

Claimant's deposition at 6–7; R.R. 40a–41a.

Mr. Erickson to Claimant:

Q: And Counsel had also asked you if there had been some discussion about when you returned to work following the first surgery. You had indicated that there were certain job duties which you were not able to do. Now following the other surgeries, were those same accommodations made to you?

A: Yes.

Q: And that was by Mr. Abbott and Mr. Colflesh?

ent any testimony whatsoever as to work availability.

 Accordingly, our review leads us to conclude that the Board erred when it stated that the record contained no substantial evidence to support a finding that Claimant had returned to her time of injury position with restrictions. Unfortunately, because the referee was never directly requested to consider Claimant's testimony as tantamount to a petition for reinstatement, the referee failed to determine whether Claimant's loss of earning power, following the lay off, resulted from any disability due to her work-related injury. As a result, we are unable to conduct an effective appellate review and must remand for specific findings on whether Claimant's benefits should be reinstated.

 We affirm the Board's denial of the payment of medical bills because the bills were never produced and vacate the order of the Board in part and remand for a determination whether a suspension should be granted only for a closed period from February 18, 1993, until May 27, 1993, the period during which Employer proved that Claimant's earning power was not affected by her work-related injury; in other words, whether benefits should be reinstated as of the date of the plant closure on May 27, 1993.[4]

### ORDER

AND NOW, this 25th day of March, 1997, the order of the Workmen's Compensation Appeal Board at No. A94–3018, and dated October 23, 1995, is affirmed in part regarding the non-produced medical bills. The order of the Board is vacated in part and the matter is remanded for a determination whether Claimant is entitled to a reinstatement of benefits as a result of the plant

A: Yes.
Claimant's deposition at 25–26; R.R. at 59a–60a.

4. Claimant also questioned whether the Board erroneously opined that all medical bills were paid. Claimant does not argue, nor did she argue before the Board, which specific medical bills remain unpaid. We agree with the Board's disposition:

closure, in other words, whether the disability thereafter was work-related.

Jurisdiction is relinquished.

LEADBETTER, J., dissents.

Claimant asserts that certain medical bills remain unpaid. However, Claimant does not detail what bills are in question or where in the record the evidence supports a finding that the bills were submitted yet remain unpaid. The Board will not perform this task for Claimant.

Board's Opinion, October 23, 1995, at 2; R.R. at 3a.