# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lackawanna County,            :
         Petitioner     :
                                  :

      v.                      :   No. 1084 C.D. 2018
                                  :   Submitted: November 21, 2018

Workers' Compensation     :
Appeal Board (Rosky),       :
         Respondent   :

BEFORE:  HONORABLE ROBERT SIMPSON, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**          **FILED: June 4, 2019**

Lackawanna County (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated July 13, 2018. The Board affirmed the decision of Workers' Compensation Judge Joseph Grady (WCJ Grady), granting the reinstatement petition filed by William R. Rosky (Claimant).[1] For the reasons set forth below, we affirm the Board's order.

Claimant worked for Employer as a Deputy Sheriff. On January 31, 2013, Claimant sustained a work-related injury to his left shoulder, neck, and upper back. By decision and order dated May 26, 2016, Workers' Compensation

---

[1] WCJ Grady also denied Employer's termination petition. Employer's termination petition is not relevant to this appeal, and, therefore, we do not address it in this opinion.

Judge Howard Spizer (WCJ Spizer) amended Claimant's injury description to include cervical radiculopathy[2] and terminated Claimant's workers' compensation benefits with respect to the injury to Claimant's left shoulder and upper back as of October 24, 2014. Thereafter, on September 8, 2016, Claimant filed a reinstatement petition, alleging that the work-related injury to his left shoulder had recurred as of June 6, 2016.

Before WCJ Grady, Claimant testified that, on January 31, 2013, he was transporting a highly intoxicated female prisoner from Employer's processing center to an ambulance, when the female prisoner started to fall forward. (R.R. at 87a-88a.) Claimant explained that he was concerned that the female prisoner would fall onto her face because her hands were handcuffed to a court belt located around her waist, so he "yanked" the court belt back with his left hand, causing him to experience a sharp, shock-like pain up his left arm and into his shoulder and neck. (*Id.* at 87a-89a.) Immediately following the work-related incident, Claimant experienced "excruciating" pain in his left shoulder joint and "running down [his] arm," as well as tingling and numbness in his hand and fingers. (*Id.* at 93a-94a, 97a-98a.) Claimant has not returned to his regular duties as a Deputy Sheriff since January 31, 2013, but he did work light duty for one month in the summer of 2013. (*Id.* at 89a.)

---

[2] There appears to be some discrepancy regarding the nature of Claimant's amended injury description. In his May 26, 2016 decision, WCJ Spizer amended Claimant's injury description to include cervical radiculopathy. (*See* Reproduced Record (R.R.) at 301a; WCJ Spizer's Decision at 8, Conclusion of Law No. 4.) In WCJ Grady's August 14, 2017 decision and Claimant's brief, however, WCJ Grady and Claimant indicate that WCJ Spizer amended Claimant's injury description to include a disc herniation at C5-6. (*See* WCJ Grady's Decision at 3, Finding of Fact No. 3; Claimant's Br. at 6.) While we have noted this discrepancy for the record, we will not address it in any further detail as Claimant's neck/cervical injury is not the subject of this appeal.

2

Claimant testified further that he has treated with various doctors for the work-related injury to his left shoulder, including Hans Olsen, M.D., who performed surgery in February 2014. (*Id.* at 90a-91a, 100a.) Following the surgery, Claimant continued to experience pain in his left shoulder that radiated down his arm into his bicep and elbow. (*Id.* at 94a.) Claimant explained, however, that the radiating pain had decreased and his range of motion had improved. (*Id.* at 94a-95a, 104a.) He continued to treat with Dr. Olsen for his left shoulder until 2015. (*Id.* at 100a.) Michael Haak, M.D., the surgeon who performed surgery on Claimant's neck, referred Claimant back to Dr. Olsen in 2016 based on Claimant's complaints of continued left shoulder pain. (*Id.* at 115a.) Claimant indicated that he treated with Dr. Olsen on two separate occasions in 2016 and that, on those occasions, Dr. Olsen examined Claimant's left shoulder, ordered an MRI, reviewed the results of the MRI with Claimant, and referred Claimant to Joseph J. Chun, D.O., for pain management. (*Id.* at 101a-03a, 116a.)

Claimant testified that he began treating with Dr. Chun in spring/early summer 2016, and Dr. Chun referred him to John D. Kelly, M.D., who scheduled a full rotator cuff tear surgery on his left shoulder. (*Id.* at 92a-93a.) Claimant testified further that he continues to experience a stabbing pain in the front and towards the top of his left shoulder joint. (*Id.* at 97a.) While he has good days, his left shoulder joint has never been pain free since the January 31, 2013 work-related injury. (*Id.* at 104a-05a.) He did not believe that he was capable of returning to work as a Deputy Sheriff due to the weakness and pain in his left shoulder. (*Id.* at 98a.) Claimant further indicated that he has not sustained any additional injuries to his left shoulder since the January 31, 2013 work-related incident. (*Id.* at 113a.)

3

Claimant also presented the deposition testimony of Dr. Chun, who is board certified in pain medicine and physical medicine and rehabilitation. (*Id.* at 166a.) Dr. Chun first treated Claimant on June 6, 2016, for complaints of pain in his left shoulder and neck. (*Id.* at 167a-68a.) At that time, Claimant reported persistent pain in the anterolateral area of his left shoulder and the left upper trapezius/upper shoulder region since the January 31, 2013 work-related injury. (*Id.* at 168a-69a.) Claimant also reported that his left shoulder pain was constant, achy and stabbing in nature, and aggravated by activity. (*Id.* at 169a-70a.) Dr. Chun's physical examination of Claimant's left shoulder revealed painful and restricted range of motion above 90 degrees, positive impingement signs, a positive biceps tendon provocative maneuver, and a positive labrum maneuver. (*Id.* at 171a-72a.) Following his examination of Claimant, Dr. Chun's initial impression was that Claimant's January 31, 2013 work-related injury caused him to suffer persistent left shoulder pain. (*Id.* at 172a-73a.) Dr. Chun diagnosed Claimant with a "left shoulder injury requiring shoulder arthroscopic labral tear repair and decompression and . . . cervical fusion at the C5-6 level[,] . . . persistent rotator cuff tendonitis, bursitis and possible bicipital tendonitis and probably persistent pain related to the superior labral tear." (*Id.* at 173a.) Based on his diagnosis, Dr. Chun recommended a diagnostic ultrasound of Claimant's left shoulder, a steroid injection into Claimant's left glenohumeral joint, and the use of a topical compound pain cream. (*Id.* at 173a-74a.)

Dr. Chun testified that Claimant returned to him on July 11, 2016. (*Id.* at 174a.) Despite the steroid injection into Claimant's left glenohumeral joint, Claimant's condition remained the same. (*Id.* at 174a-75a.) As a result, Dr. Chun recommended that Claimant undergo a platelet-rich plasma injection in his left

4

glenohumeral joint. (*Id.* at 176a.) Dr. Chun also continued Claimant's work restrictions of sedentary duty with no activities involving the left shoulder. (*Id.*) Thereafter, on July 25, 2016, Claimant underwent a diagnostic ultrasound of his left shoulder, which revealed moderate subacromial subdeltoid bursal thickening, supraspinatus tendinopathy, possible subtle interstitial tearing of the tendon, and a small partial-thickness tear of the infraspinatus tendon. (*Id.* at 177a-78a, 221a-22a.) Dr. Chun indicated that these results were consistent with both his physical examinations of Claimant and the May 2016 MRI of Claimant's left shoulder. (*Id.* at 178a.) Claimant again returned to Dr. Chun on September 28, 2016. (*Id.* at 180a.) At that time, Claimant reported only slight improvement with his pain following the platelet-rich plasma injection into his left shoulder and his overall condition remained unchanged. (*Id.* at 180a-81a.) Dr. Chun explained that platelet-rich plasma injections can take several weeks to a couple months to deliver results, and, therefore, he recommended that Claimant wait some additional time to see if he received any improvement with his symptoms. (*Id.* at 181a.)

Dr. Chun testified that he next treated Claimant on November 28, 2016. (*Id.* at 182a.) At that time, Claimant reported minimal improvement in his pain and that his pain continued to be aggravated with activity; Claimant's condition otherwise remained the same. (*Id.* at 182a-83a.) Because Claimant continued to experience significant pain and functional limitations despite injections, medications, physical therapy, and home exercises, Dr. Chun referred Claimant to Dr. Kelly for an orthopedic surgery consultation. (*Id.* at 183a-84a.) Claimant returned to Dr. Chun on January 30, 2017, and March 13, 2017. (*Id.* at 184a, 187a.) On those dates, Claimant's pain complaints and Dr. Chun's physical examination of Claimant remained unchanged. (*Id.* at 184a-87a.) Dr. Chun explained, however,

5

that, based on Dr. Kelly's consultation of Claimant, his impression had changed to include a high-grade partial rotator cuff tear in Claimant's left shoulder. (*Id.* at 187a-89a.) Dr. Chun also explained that Claimant's work restrictions remained the same as they had throughout his treatment—*i.e.*, sedentary duty with no activities involving the left shoulder. (*Id.* at 181a, 183a, 186a, 189a-90a.)

Dr. Chun further testified that the May 2016 MRI of Claimant's left shoulder, when compared with a March 2013 MRI, evidenced a worsening of Claimant's condition with respect to the supraspinatus tendon. (*Id.* at 192a-94a.) Overall, Dr. Chun opined that Claimant continues to suffer from his January 31, 2013 work-related injury, which he diagnosed as a high-grade partial rotator cuff tear, rotator cuff tendonitis, bursitis, possible bicipital tendinitis, and persistent pain relative to the superior labral tear. (*Id.* at 196a-97a.) Dr. Chun further opined that he would continue to restrict Claimant to sedentary duty with no activities involving the left shoulder and that Claimant was not capable of returning to work as a Deputy Sheriff. (*Id.* at 198a, 202a.) Dr. Chun also opined that the disability related to Claimant's work-related left shoulder injury: (1) recurred at least as of his initial examination of Claimant on June 6, 2016; and (2) worsened since October 24, 2014, the date of WCJ Spizer's decision terminating Claimant's benefits relative to the left shoulder injury. (*Id.* at 199a-200a.) With respect to the worsening of Claimant's left shoulder injury, Dr. Chun explained that the symptoms relative to Claimant's left shoulder progressed throughout his treatment of Claimant and that such progression was the natural progression of the work-related injury to Claimant's left shoulder. (*Id.* at 200a.)

On cross-examination, Dr. Chun admitted that, in the course of his treatment of Claimant, he only reviewed Dr. Olsen's medical records for Claimant

6

from May 2016, and he did not review Dr. Olsen's operative report or Claimant's medical records from Michael Tracy, M.D., Christian Fras, M.D., or Dr. Haak. (*Id.* at 204a-05a, 210a-11a.) Dr. Chun also admitted that Claimant had reported to him that his left shoulder pain had been persistent since the time of his January 31, 2013 work-related injury and that the problem with his left shoulder was chronic. (*Id.* at 205a, 227a-28a.) Dr. Chun also indicated that, since June 2016, Claimant's left shoulder condition had not improved and was sometimes worse.[3] (*Id.* at 228a.)

On August 14, 2017, WCJ Grady issued a decision and order, granting Claimant's reinstatement petition. In so doing, WCJ Grady made the following relevant findings of fact and credibility determinations:

18. After having made a careful review of the evidence of record[,] the testimony of [Claimant] and the findings and opinions of Dr. Chun have been accepted as most credible and convincing and to this end it is found that [Claimant's] original work injury to his left shoulder has *recurred* . . . and therefore [C]laimant's [r]einstatement [p]etition shall be granted . . . .

19. In reaching the above finding this Judge is mindful of [Claimant's] medical history since his work injury of January 31, 2013. And this Judge is also mindful of [WCJ] Spizer's previous decision from May 2016 wherein he found [C]laimant fully recovered from his left shoulder injury and terminated [Employer's] responsibility with respect to the same effective October 24, 2014.

---

[3] Employer presented the deposition testimony of Neil Kahanovitz, M.D., who is board certified in orthopedic surgery and restricts his practice to disorders of the spine. (R.R. at 309a-10a.) Dr. Kahanovitz performed an independent medical examination of Claimant on August 12, 2016. (*Id.* at 312a.) Dr. Kahanovitz restricted his independent medical examination, however, to Claimant's cervical issues; he did not address Claimant's left shoulder complaints or subsequent treatment thereof. (*Id.* at 313a-14a.)

7

Against that backdrop[,] the testimony of [Claimant] and Dr. Chun having been reviewed most carefully and having accepted both as credible particularly [C]laimant's complaints through 2014, and following his surgery in February 2014 on his left shoulder, which complaints continued through 2014, into 2015 and 2016 and necessitated surgery with Dr. Kelly in February 2017, the same has caused this Judge to grant [C]laimant's [r]einstatement [p]etition.

Claimant credibly explained and described shoulder pain particularly in his shoulder joint in the front and towards the top of his shoulder area noting that it felt like a screwdriver in his shoulder with a sharp stabbing pain. Claimant described this pain existed even after the February 2014 surgery with the pain at times radiating down his left arm and into his bicep and elbow.

While Dr. Kahanovitz who testified on behalf of [Employer] herein performed an evaluation on [Claimant] on August 12, 2016, it is noteworthy that Dr. Kahanovitz quite clearly identified that [neither] [C]laimant's shoulder complaints nor subsequent treatment of his shoulder was addressed at the time of his independent medical evaluation. Dr. Kahanovitz's evaluation was almost exclusively done with respect to [Claimant's] neck. The terms almost exclusively have been used inasmuch as admittedly [C]laimant explained to Dr. Kahanovitz his work injury did involve a left shoulder injury and identified to Dr. Kahanovitz that he was continuing treatment and pain management for his left shoulder. Dr. Kahanovitz offered nothing more.

(WCJ Grady's Decision at 8-9 (emphasis added).) Based on these findings of fact and credibility determinations, WCJ Grady concluded that Claimant met his burden of proof under his reinstatement petition and established that he suffered a recurrence of his January 31, 2013 work-related left shoulder injury and that he is disabled as a direct result thereof. Employer appealed WCJ Grady's decision to the Board, which

8

affirmed WCJ Grady's decision. In so doing, the Board—applying the burden of proof applicable to a reinstatement of benefits following a suspension—concluded that Dr. Chun's credible testimony constituted the substantial evidence necessary for Claimant to meet his burden of proof under his reinstatement petition. Employer then petitioned this Court for review.

On appeal,[4] Employer argues: (1) the Board committed an error of law by affirming WCJ Grady's decision because the Board and/or WCJ Grady applied the incorrect burden of proof to Claimant's reinstatement petition; (2) there is not substantial evidence of record to support WCJ Grady's finding that Claimant's left shoulder injury had recurred as of June 6, 2016; and (3) the substantial evidence of record establishes that Claimant did not sustain a recurrence of his January 31, 2013 work-related left shoulder injury because the current condition of Claimant's left shoulder is unrelated to Claimant's original work-related injury and/or Claimant's employment with Employer.

First, we address Employer's argument that the Board committed an error of law by affirming WCJ Grady's decision because the Board and/or WCJ Grady applied the incorrect burden of proof to Claimant's reinstatement petition. More specifically, Employer argues that WCJ Spizer previously determined that Claimant had fully recovered from his work-related left shoulder and upper back injuries and terminated Claimant's workers' compensation benefits in connection with such injuries effective October 24, 2014. Employer further argues that, rather than applying the burden of proof applicable to a reinstatement of benefits following

---

[4] Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, and whether constitutional rights were violated. *Combine v. Workers' Comp. Appeal Bd. (Nat'l Fuel Gas Distrib. Corp.)*, 954 A.2d 776, 778 n.1 (Pa. Cmwlth. 2008), *appeal denied*, 967 A.2d 961 (Pa. 2009).

9

a termination of benefits, the Board and/or WCJ Grady incorrectly applied the burden of proof applicable to a reinstatement following a suspension of benefits. In response, Claimant argues that, while the Board incorrectly cited the burden of proof applicable to reinstatement following a suspension of benefits in its decision, WCJ Grady correctly applied the burden of proof applicable to reinstatement following a termination of benefits, and, therefore, the Board's citation to the incorrect burden of proof constitutes harmless error.

When a claimant seeks a reinstatement of benefits, his burden of proof is dependent on whether his benefits had been previously suspended or terminated. *Pieper v. Ametek-Thermox Instruments Div.*, 584 A.2d 301, 304-05 (Pa. 1990). "A claimant seeking reinstatement following a suspension of benefits must prove that: (1) through no fault of his . . . own, the claimant's disability, *i.e.*, earning power, is again adversely affected by the work-related injury, and (2) the disability which gave rise to the original claims continues." *Sweeny v. Workmen's Comp. Appeal Bd. (Whitman's Chocolates)*, 695 A.2d 877, 880 (Pa. Cmwlth. 1997). "A claimant seeking [a] reinstatement of benefits following a termination[, however,] carries a heavy burden because the claimant has been adjudicated to be fully recovered." *Nat'l Fiberstock Corp. (Greater New York Mut. Ins. Co.) v. Workers' Comp. Appeal Bd. (Grahl)*, 955 A.2d 1057, 1062 (Pa. Cmwlth. 2008). "In order to prevail on a reinstatement petition after workers' compensation benefits have been terminated, a claimant must establish that his disability 'has increased or recurred since the prior decision and that h[is] physical condition has changed in some manner.'" *Namani v. Workers' Comp. Appeal Bd. (A. Duie Pyle)*, 32 A.3d 850, 854 (Pa. Cmwlth. 2011) (alteration in original) (quoting *Taylor v. Workers' Comp. Appeal Bd. (Servistar Corp.)*, 883 A.2d 710, 713 (Pa. Cmwlth. 2005)), *appeal*

10

*denied*, 47 A.3d 849 (Pa. 2012). A claimant must prove the change in his physical condition "by precise and credible evidence of a more definite and specific nature than that upon which initial compensation was based." *Nat'l Fiberstock Corp.*, 955 A.2d at 1062 (quoting *Simeone v. Workmen's Comp. Appeal Bd. (United Parcel Serv.)*, 580 A.2d 926, 928 n.5 (Pa. Cmwlth. 1990), *appeal denied*, 593 A.2d 428 (Pa. 1991)).

Here, the parties do not dispute that WCJ Spizer terminated Claimant's benefits with respect to his left shoulder injury as of October 24, 2014, or that Claimant is seeking a reinstatement of his benefits following termination. While we agree with Employer that the Board applied the incorrect burden of proof to Claimant's reinstatement petition—*i.e.*, the Board applied the burden of proof following a suspension of benefits rather than the burden of proof following a termination of benefits—this Court is satisfied that WCJ Grady applied the burden of proof applicable to a reinstatement following a termination of benefits. In his decision, WCJ Grady specifically indicated that the injury to Claimant's left shoulder had "recurred." (WCJ Grady's Decision at 8, Finding of Fact No. 18.) WCJ Grady explained that Claimant's left shoulder complaints continued into 2015 and 2016 and necessitated surgery with Dr. Kelly in 2017—*i.e.*, WCJ Grady discussed how Claimant's disability increased and his physical condition had changed since October 24, 2014, the date on which WCJ Spizer terminated Claimant's benefits related to his left shoulder injury. (WCJ Grady's Decision at 8, Finding of Fact No. 19.) WCJ Grady further explained that he was "mindful of [WCJ] Spizer's previous decision from May 2016 wherein he found [C]laimant fully recovered from his left shoulder injury and terminated [E]mployer's responsibility with respect to the same effective October 24, 2014." (WCJ Grady's Decision at 8,

Finding of Fact No. 19.) Given this analysis, it is clear that WCJ Grady properly applied the burden of proof applicable to a reinstatement of benefits following termination as set forth in *Namani*. The Board's error in applying the incorrect burden of proof is harmless.[5]

Next, we address Employer's argument that there is not substantial evidence of record to support WCJ Grady's finding that Claimant's left shoulder injury had recurred as of June 6, 2016. More specifically, Employer argues that Claimant failed to establish through his or Dr. Chun's testimony that his left shoulder condition had recurred or worsened; in fact, "Dr. Chun agreed that the alleged issues with [Claimant's] left shoulder were not acute conditions that recurred or worsened in June 2016, but rather are chronic and longstanding." (Employer's Br. at 17.) In response, Claimant argues that WCJ Grady's finding that Claimant's left shoulder injury had recurred and worsened after Claimant's workers' compensation benefits had been terminated is supported by the credible testimony of Dr. Chun. More

---

[5] In *Furnari v. Workers' Compensation Appeal Board (Temple Inland)*, 90 A.3d 53 (Pa. Cmwlth. 2014), the claimant sought to reinstate his temporary total disability benefits following his separation from employment by filing a reinstatement petition and/or a claim petition. *Furnari*, 90 A.3d at 58. The workers' compensation judge (WCJ) denied the claimant's reinstatement petition, concluding that the medical-only notice of compensation payable (NCP) coupled with the employer's payment of the claimant's salary constituted a *de facto* NCP and the claimant failed to meet his burden of proving that his condition had worsened such that he could not perform the modified-duty position with the employer. *Id.* On appeal to the Board, the Board disagreed with both the WCJ's finding of a *de facto* NCP and the WCJ's application of the burden of proof applicable to reinstatement petitions but affirmed the WCJ's decision on the basis that the claimant failed to meet his burden of proof that he suffered a worsening of his condition. *Id.* On appeal to this Court, we held that the Board erred in applying the burden of proof applicable to claim petitions but that such error was harmless, because the WCJ properly applied the burden of proof applicable to reinstatement petitions and both the Board and the WCJ concluded that the claimant failed to meet his burden of proving that his earning power was adversely affected by his work-related injury. *Id.* at 62. Ultimately, this Court reversed the Board's order to the extent that the Board applied the burden of proof applicable to claim petitions but affirmed the Board's order in all other respects. *Id.* at 74.

12

specifically, Claimant argues that Dr. Chun credibly testified that Claimant's left shoulder condition worsened since October 24, 2014 (the date that WCJ Spizer terminated Claimant's benefits with respect to the left shoulder injury), that the symptoms in Claimant's left shoulder have progressed, and that such progression is the natural progression of Claimant's January 31, 2013 work-related injury.

In workers' compensation proceedings, the WCJ is the ultimate finder of fact. *Williams v. Workers' Comp. Appeal Bd.* (*USX Corp.-Fairless Works*), 862 A.2d 137, 143 (Pa. Cmwlth. 2004). As fact-finder, matters of credibility, conflicting medical evidence, and evidentiary weight are within the WCJ's exclusive province. *Id.* If the WCJ's findings are supported by substantial evidence, they are binding on appeal. *Agresta v. Workers' Comp. Appeal Bd.* (*Borough of Mechanicsburg*), 850 A.2d 890, 893 (Pa. Cmwlth. 2004). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a finding. *Mrs. Smith's Frozen Foods Co. v. Workmen's Comp. Appeal Bd. (Clouser)*, 539 A.2d 11, 14 (Pa. Cmwlth. 1988). "In performing a substantial evidence analysis, this [C]ourt must view the evidence in a light most favorable to the party who prevailed before the factfinder." *Hoffmaster v. Workers' Comp. Appeal Bd.* (*Senco Prods., Inc.*), 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). "Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party." *Id.*

Here, WCJ Grady's finding that Claimant's left shoulder injury had recurred as of June 6, 2016, is supported by substantial evidence. Dr. Chun credibly testified that Claimant continues to suffer from his January 31, 2013 work-related left shoulder injury and that the disability relative to such injury recurred at least as of his initial examination of Claimant on June 6, 2016, and worsened since

13

October 24, 2014, the date on which WCJ Spizer terminated Claimant's benefits with respect to the injury to Claimant's left shoulder. Dr. Chun explained that the symptoms relative to Claimant's left shoulder progressed throughout his treatment of Claimant and that such progression was the natural progression of the January 31, 2013 work-related injury to Claimant's left shoulder. While it is true that Claimant testified that his left shoulder joint has never been pain free since the January 31, 2013 work-related injury and that Claimant did not specifically report to Dr. Chun that his left shoulder condition had recurred or worsened since October 24, 2014, these facts are not dispositive. Dr. Chun, as the medical professional, considered Claimant's complaints, the results of Claimant's diagnostic testing, and his physical examination of Claimant to determine whether Claimant's left shoulder condition had recurred or worsened. Even though Claimant described his pain as persistent since the January 31, 2013 work-related injury, Dr. Chun concluded based on his review of Claimant's condition, including diagnostic testing and his physical examination, that Claimant's left shoulder condition had recurred or worsened.

In addition, contrary to Employer's contentions, Dr. Chun did not agree that Claimant's left shoulder issues were chronic and longstanding rather than acute conditions that had recurred or worsened in June 2016. The testimony cited by Employer in support of this proposition is simply Dr. Chun's admission that *Claimant had reported to him* that his left shoulder pain had been persistent since the time of his January 31, 2013 work-related injury and that the problem with his left shoulder was chronic. (R.R. at 205a, 227a-28a.) Employer has not directed us to anywhere in the record where Dr. Chun specifically opined that Claimant's left shoulder injury had not recurred or worsened in June 2016. For these reasons, we

14

conclude that substantial evidence of record exists to support WCJ Grady's finding that Claimant's left shoulder injury had recurred as of June 6, 2016.

Lastly, Employer argues that the current condition of Claimant's left shoulder is not related to Claimant's original work-related injury and/or Claimant's employment with Employer because, "[a]s of June 6, 2016, [Claimant] had not worked for . . . Employer for almost [three] years [and] the left shoulder abnormality noted by Dr. Kelly was classified by him as a non-traumatic degenerative tear." (Employer's Br. at 19.) In response, Claimant argues that Employer's attempt to establish that the current condition of his left shoulder is not a recurrence of his January 31, 2013 work-related injury but rather "is due to some unnamed non-work related cause . . . [is] utter speculation with no basis in the record." (Claimant's Br. at 12.) More specifically, Claimant argues that the only evidence of record to support the worsening of Claimant's work-related left shoulder injury is the testimony of Dr. Chun, which establishes that "the worsening of [Claimant's] left shoulder injury following the termination of benefits was the natural progression of the original work injury." (Claimant's Br. at 13.)

Here, Employer has framed its issue in terms of whether there is substantial evidence to support a finding that was not made by WCJ Grady—*i.e.*, whether there is substantial evidence of record to establish that Claimant did not sustain a recurrence of his January 31, 2013 work-related left shoulder injury. The real issue before this Court, however, is whether there is substantial evidence of record to support WCJ Grady's necessary findings, in this instance, that Claimant suffered a recurrence of his January 31, 2013 work-related left shoulder injury. This argument is essentially the same argument made by Employer above, and, as explained more fully above, WCJ Grady's finding that Claimant suffered a

recurrence of his January 31, 2013 work-related left shoulder injury is supported by substantial evidence. Dr. Chun credibly testified that Claimant continues to suffer from his January 31, 2013 work-related left shoulder injury and that the disability relative to such injury recurred at least as of his initial examination of Claimant on June 6, 2016, and worsened since October 24, 2014.

Employer seems to suggest that, just because Claimant had not worked for Employer for almost three years prior to June 6, 2016, and Dr. Kelly, in his April 10, 2017 operative report, classified Claimant's left shoulder abnormality as a non-traumatic tear, Claimant could not possibly have suffered a recurrence of his January 31, 2013 work-related injury. We stress, however, that it does not matter if there is evidence in the record that could support a finding contrary to that made by WCJ Grady; the only inquiry is whether there is substantial evidence of record to support WCJ Grady's findings. *Hoffmaster*, 721 A.2d at 1155. In addition, Employer has failed to cite any place in the record where the current condition of Claimant's left shoulder is linked to anything other than the January 31, 2013 work-related injury. Furthermore, while Dr. Kelly's operative report may indicate that Claimant sustained "labral fraying incomplete non-traumatic tear and bursitis" in his left shoulder, such an indication is not conclusive evidence that the non-traumatic tear was not related to Claimant's January 31, 2013 work-related injury, as no medical provider provided any testimony regarding the significance or insignificance of Dr. Kelly's finding. For these reasons, we reiterate our conclusion that there is substantial evidence of record to support WCJ Grady's finding that Claimant suffered a recurrence of his January 31, 2013 work-related left shoulder injury.

Accordingly, we affirm the Board's order.


_____
P. KEVIN BROBSON, Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Lackawanna County,            :
             Petitioner      :
                               :
         v.                     :    No. 1084 C.D. 2018
                               :
Workers' Compensation       :
Appeal Board (Rosky),         :
             Respondent    :

## **O R D E R**

AND NOW, this 4th day of June, 2019, the order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

P. KEVIN BROBSON, Judge