IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Josephine Hinchey,                          :
                                            :
                            Petitioner      :
                                            :
                  v.                        :  No. 47 C.D. 2021
                                            :  Submitted:  October 22, 2021
Mercy Catholic Medical Center               :
(Workers' Compensation                      :
Appeal Board),                              :
                                            :
                            Respondent      :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                     FILED:  April 28, 2022


          Josephine Hinchey (Claimant) petitions for review of the December 23, 2020 order of the Workers' Compensation Appeal Board (Board) affirming a decision of Workers' Compensation Judge (WCJ) Geoffrey Lawrence that denied her petition to reinstate compensation benefits (reinstatement petition) pursuant to the provisions of the Workers' Compensation Act (Act).[1]  Claimant contends the WCJ failed to issue a reasoned decision because he did not issue specific findings regarding her medical evidence or her credibility.  For the following reasons, we affirm the Board.

_____
          [1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

On September 16, 2014, Claimant sustained a work-related injury while lifting a patient, and Mercy Catholic Medical Center (Employer) accepted the injury, described as a lumbar spine strain, pursuant to a notice of temporary compensation payable that converted to a notice of compensation payable by operation of law. WCJ Kathleen DiLorenzo decision circulated 12/20/16 (DiLorenzo 12/20/16 Decision), Findings of Fact (F.F.) No. 4; Reproduced Record (R.R.) at 285a. Pursuant to the provisions of the Act, Claimant began receiving total disability benefits of $352.15 per week on the basis of a preinjury wage of $391.28. *Id.*

In 2015, Claimant filed two review petitions seeking to expand the description of her work injury to include (1) a neck injury and (2) depression and anxiety caused by chronic pain. DiLorenzo 12/20/16 Decision, F.F. Nos. 1-2; R.R. at 285a. Employer filed a petition to terminate benefits contending that Claimant had fully recovered from her work injury by December 17, 2015. DiLorenzo 12/20/16 Decision, F.F. No. 3; R.R. at 285a. The petitions were consolidated before WCJ DiLorenzo and on December 20, 2016, she denied and dismissed Claimant's review petitions and granted Employer's termination petition. DiLorenzo 12/20/16 Decision at 7-8; R.R. at 289a-90a. On January 10, 2017, Claimant appealed to the Board and Employer moved to quash the appeal as untimely. *Id.* at 295a. The Board agreed with Employer and granted the motion to quash. *Id.* at 298a. Claimant filed a petition for review to this Court but on May 25, 2018, she filed an application to discontinue and withdraw the petition for review. *Id.* at 200a. By order dated May 29, 2018, we granted Claimant's application and ended the matter. *Id.* at 303a.

On November 30, 2018, Claimant filed a reinstatement petition, claiming a "[w]orsening of condition necessitating surgery." R.R. at 1a. Employer filed an answer denying Claimant's allegations. *Id.* at 7a. Employer moved for

dismissal of the reinstatement petition on the ground that Claimant was attempting to relitigate matters already decided. WCJ Lawrence 1/8/19 Hearing at 6-7; R.R. at 47a-48a. By interlocutory letter and order of March 1, 2019, WCJ Lawrence questioned whether it was medically possible to suffer a recurrence of a lumbar strain following a full recovery but concluded that Claimant was entitled to present her case. *Id.* at 11a. Accordingly, Employer's motion to dismiss the reinstatement petition was denied. *Id.* at 12a.

Claimant testified by deposition on April 11, 2019, and before WCJ Lawrence on September 17, 2019.[2] At the deposition, Claimant stated that she worked as a unit facilitator for Employer for 15 years. Claimant 4/11/19 Deposition at 6; R.R. at 136a. She assisted nurses with patients, escorted patients to diagnostic testing, and stocked the emergency rooms. She sustained an injury on September 16, 2014, that Employer accepted as a lumbar strain. *Id.* at 6-7; R.R. at 135a-36a. She agreed that WCJ DiLorenzo granted Employer's termination petition regarding that injury on December 20, 2016.

Claimant stated that "around" Christmas of 2016, she had "flare-ups" in her back and she "couldn't stand up straight, walk normal, [or] put [her] clothes on normal." Claimant 4/11/19 Deposition at 7; R.R. at 136a.[3] She was "hunched over" in pain. *Id.* Claimant states she has pain every day, but "when a flare-up happens, it's a worse pain." Claimant 4/11/19 Deposition at 8; R.R. at 137a. In 2017, she had more bad days than good days. In 2018, her symptoms worsened; she

---

[2] Claimant sought reinstatement of benefits from February 16, 2018, to February 16, 2019. WCJ Lawrence 9/17/19 Hearing at 8; R.R. at 95a. Because her claim for reinstatement was limited to 52 weeks, both parties submitted their medical evidence by report. WCJ Lawrence 2/4/20 Decision at 3.

[3] Claimant applied for Social Security Disability and was awarded benefits in 2018. Claimant's Deposition at 13; R.R. at 142a.

now had a stinging, burning pain in her right thigh, with weakness into her foot and ankle. Claimant 4/11/19 Deposition at 9; R.R. at 138a.

Claimant attends physical therapy and treats with Dr. Grodofsky for pain management. She continues to have back pain and right leg pain that radiates to her foot. When walking, sometimes she must pick up her right leg and move it. She has had no improvement with treatment.

On cross-examination, Claimant was asked about the complaints she had in 2015, prior to the termination of her benefits. Claimant 4/11/19 Deposition at 19; R.R. at 148a. Claimant admitted that she had complained about tingling, numbness, and weakness in her right leg; pain negotiating steps; and increased symptoms in wet and cold weather. *Id.* She also had sharp pain in her lumbar region, radiating into her leg and foot. Claimant 4/11/19 Deposition at 12-13; R.R. at 153a-54a. The flare-ups she had in late 2016 were not new. Claimant 4/11/19 Deposition at 35; R.R. at 164a. She had flare-ups since her 2014 work injury. However, they now last longer and are more painful. *Id.*

At the WCJ hearing, Claimant reported that her symptoms have worsened since the deposition. WCJ Lawrence 9/7/19 Hearing at 28; R.R. at 115a. She has twin grandsons and cannot pick them up. Nor can she drive for long periods of time. On a good day, she rates her back and leg pain as a 7; on a bad day it is a 10. She is in constant pain, for which she is prescribed Motrin. Dr. Grodofsky[4] recommended a spinal cord stimulator to treat the nerves in her lower back and leg. *Id.* On cross-examination, Claimant was asked whether her current medical treatment was for other medical issues and not only for a lumbar strain. WCJ

---

[4] She states that it was Patrick Murphy, M.D., who recommended the stimulator but later clarifies it was Dr. Grodofsky. WCJ Lawrence 9/17/19 Hearing at 30; R.R. at 117a.

Lawrence 9/7/19 Hearing at 33; R.R. at 120a. She stated that she is also being treated for neck pain.

In support of her reinstatement petition, Claimant presented the reports and records of Dr. Grodofsky, Dr. Murphy, and Dr. Nirav Shah. Dr. Grodofsky, who is board certified in pain medicine and anesthesiology, issued a narrative report on August 15, 2019. R.R. at 178a-83a. He began treating Claimant in 2018. *Id.* at 182a. Claimant informed him she felt a sharp pain on September 16, 2014, when moving a patient from a stretcher to a bed. *Id.* at 178a. The pain traveled down her back and her right leg. *Id.* She also developed back pain immediately after the work incident and claimed the pain increases by walking, prolonged sitting, and prolonged standing. Her pain is relieved by rest, Motrin, and treating with ice/heat. *Id.*

Dr. Grodofsky opined that Claimant's work-related lifting injury led to a traumatic injury of her cervical and lumbar spine due to preexisting spondylosis. He explained that a magnetic resonance imaging (MRI) scan done in 2013, prior to the work injury, established spondylosis. Further, Claimant's medical records showed "a continuous history of low back and neck pain that has persisted since the date of the [work injury]." R.R. at 182a. He diagnosed Claimant with L4-5 and L5-S1 disc disease with radiculopathy that was aggravated by the lifting injury, and C5-6 disc disease with radiculopathy that was aggravated by the lifting injury. *Id.* Additionally, he diagnosed Claimant with acute cervical myofascial strain, non-specific low back pain and lumbar back strain. *Id.* He stated that Claimant's pain is chronic and likely permanent in the absence of surgery. She cannot perform her preinjury job or work in any capacity because of the work injury. *Id.* at 183a.

Dr. Murphy, who specializes in physical medicine and rehabilitation, submitted treatment records from 2016 through 2018, and an undated narrative

5

report. R.R. at 189a-201a, 221a-23a. His most recent treatment record dated April 12, 2018, identified that Claimant had nine medical conditions that are "directly and causally related" to Claimant's work injury. *Id.* at 200a. He listed her conditions, as follows: (1) lumbar strain and sprain; (2) right L4 radiculopathy and chronic L5-S1 radiculopathy; (3) cervical strain and sprain; (4) trapezius sprain and strain; (5) right-sided C5 radiculitis; (6) lumbosacral strain and sprain; (7) sacroiliac joint dysfunction; (8) left paracentral disc herniation at C4-5, center annular tear at C5-6, left-sided disc herniation with osteophytosis at C6-7; and (9) anxiety and depression with facial twitching. *Id.*

In his narrative report, Dr. Murphy noted that Claimant had seen multiple specialists over the years, but her symptoms have persisted. R.R. at 221a. Her symptoms have also progressed while he has been treating her. An electromyography (EMG) done on September 18, 2014, showed a shallow right disc protrusion contacting the right traversing S1 nerve root. *Id.* at 222a. An EMG done on August 22, 2015, established that she has acute L4-5 right-side radiculopathy and chronic L5-S1 right-side radiculopathy. *Id.* Dr. Murphy acknowledged that the EMG occurred nearly a year after her work injury but claims it is normal to find chronic findings on an EMG "long after an injury." *Id.* at 222a. He stated that her current symptoms are related to a worsening of her lumbar strain. Further, her anxiety and depressed mood are exacerbations of the pain caused by the work injury.

Treatment records from Dr. Shah, a neurosurgeon, were submitted into evidence. R.R. at 211a-19a. He first evaluated Claimant on March 21, 2017. He advised that Claimant had an MRI done in 2013 due to a prior injury. *Id.* at 211a-12a. He stated that MRIs of the cervical and lumbar spine done in 2014 because of the work injury showed "relatively unchanged findings from that of 2013." *Id.* at

6

212a. Further, "2015 imaging" showed "no new findings." *Id.* at 212a-13a. Dr. Shah found that Claimant has a "significant aggravation injury to her cervical and lumbar spine" due to the work injury. *Id.* at 212a. He opined that Claimant's "aggravation injury has not resolved" and her pain was worsening, preventing her return to work. *Id.* at 213a. Because Claimant's pain is increasing, surgery may need to be considered. Dr. Shah's most recent treatment record, dated March 30, 2018, concluded that Claimant continued to suffer from "posttraumatic neck and back pain" and that surgery was discussed but Claimant did not want to undergo the risks involved with surgery at that point in time. *Id.* at 218a.

Employer submitted two reports by Dr. Leonard Brody, an orthopedic surgeon. R.R. at 243a-47a, 289a-91a. On May 29, 2019, Dr. Brody performed an orthopedic evaluation of Claimant. *Id.* at 243a. Her chief complaints were neck pain, which had begun radiating into her arms and low back pain, which is now radiating into both legs. She attended physical therapy two to three times weekly for pain and was prescribed Prozac and Motrin. *Id.* at 244a. He also reviewed Claimant's medical records. He noted that Claimant denied a prior history of back and neck pain, which was belied by the fact the MRIs of her cervical and lumbar spine were performed in 2013, and a doctor's report determined she had discogenic low back pain and cervical disc herniation with intermittent radicular symptoms. *Id.* at 246a.

Dr. Brody stated that Claimant may have suffered a short-term strain due to her 2014 work injury, but "there is nothing on evaluation today that would indicate [she has] any residuals in reference to the [work injury]." R.R. at 246a. He found Claimant had excellent range of motion of her cervical and lumbar spine, no neurological findings in her upper or lower extremities, no muscle spasms in her

7

cervical or lumbar spine, and no evidence of radiculopathy. *Id.* at 246a. Dr. Brody concluded that Claimant completely recovered from her 2014 work injury and is not in need of physical therapy or work restrictions. *Id.* at 247a.

In his latter report, Dr. Brody reviewed documents generated by Dr. Grodofsky, Dr. Murphy, and Dr. Shah. R.R. at 279a-81a. Dr. Brody stated that none of the documents changed his original opinion regarding Claimant's work injury. *Id.* at 281a. Further, Claimant's accepted injury was a lumbar strain and there are no surgical indications in reference to Claimant's lumbar spine as related to her work injury. *Id.*

On February 4, 2020, WCJ Lawrence denied Claimant's petition to reinstate compensation benefits. The WCJ found that "Claimant's medical evidence suggests an attempt to relitigate the original description of the injury." WCJ Lawrence 2/4/20 Decision at 3. None of Claimant's doctors addressed that her injury was limited to a claim that her lumbar strain, from which she had fully recovered, had recurred. In fact, Dr. Grodofsky found that Claimant's work injury was causally related to an aggravation of a preexisting condition, namely spondylosis. *Id.* WCJ Lawrence stated that Dr. Grodofsky's opinion was incompetent as a matter of law and barred by *res judicata*. Dr. Murphy's numerous diagnoses, including lumbar radiculopathy and C5 radiculitis conflicted with the findings of WCJ DiLorenzo. Dr. Murphy's statement that Claimant's current symptoms are related to a worsening of her lumbar strain did suggest an attempt to acknowledge WCJ DiLorenzo's findings, but he never acknowledged or addressed that Claimant's lumbar strain had completely resolved in 2015 or explained how it could recur. *Id.* at 4. WCJ Lawrence questioned whether it was medically possible for Claimant to suffer a recurrence of a lumbar strain, following a full recovery, and faulted Dr. Murphy for

8

not explaining how Claimant's multiple diagnoses could possibly result from a recurrence of a lumbar strain. The WCJ concluded that Dr. Murphy's opinion was legally incompetent. Also, Dr. Shah diagnosed Claimant with preexisting cervical and lumbar radiculopathy, which was aggravated by the lumbar strain. The WCJ stated that Dr. Shah's opinion was invalid.

WCJ Lawrence noted that Employer submitted evidence from Dr. Brody that Claimant was fully recovered from her work injury. However, the WCJ concluded that it was unnecessary to further summarize the evidence or make credibility determinations because Claimant failed to present a "*prima facie* medical opinion in support of her [reinstatement] petition and it must be dismissed." WCJ Lawrence 2/4/20 Decision at 4.

On appeal to the Board, Claimant argued that WCJ Lawrence erred in concluding that Claimant did not meet her burden of proof. R.R. at 21a. She claimed the WCJ failed to explain the rationale for his decision, rendering it not reasoned. Further, the WCJ erroneously rejected Dr. Murphy's finding that Claimant's condition had worsened by deciding that Dr. Murphy was impermissibly implying that Claimant's work injury had never resolved. The Board affirmed the WCJ, explaining that Claimant did not meet her burden of proof because she did not introduce any medical evidence showing a causal connection between her accepted work injury and her alleged current disability, or that established a change in her physical condition following her full recovery in 2015. While a WCJ generally needs to make credibility determinations regarding a claimant's testimony, here it was not necessary because WCJ Lawrence properly concluded that none of Claimant's medical witnesses' opinions were legally competent. Only Dr. Murphy even mentioned that Claimant's accepted work injury was a lumbar strain. However,

9

he provided no explanation how Claimant could suffer a recurrence or a worsening of a lumbar strain. Thus, Claimant failed to establish that her accepted work injury was causally connected to her new symptoms.

Claimant petitions for review to this Court,[5] raising one issue. Claimant contends the WCJ failed to issue a reasoned decision based on the evidence as a whole. Specifically, Claimant asserts that the WCJ failed to issue specific findings with regard to her testimony or her medical evidence.

In her brief, Claimant states that in December 2016, she began to have increased pain in her back from her accepted work injury. She now has weakness in her right leg and ankle, which precludes her from lifting her foot to step over things when walking. Her testimony was corroborated by Dr. Murphy,[6] who opined that her new symptoms were related to a worsening of her lumbar strain. Claimant argues that WCJ Lawrence's failure to address her evidence showing a worsening of her accepted work injury establishes his decision is not reasoned.

Employer responds that Claimant's accepted work injury was a lumbar strain from which she fully recovered as of December 17, 2015. Her burden on reinstatement was to introduce competent medical evidence of a causal connection between that lumbar strain and her alleged current disability. Her medical evidence

---

[5] Our review is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704. We acknowledge *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002), wherein the Pennsylvania Supreme Court held that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court."

[6] In her brief, Claimant does not reference the opinions of Dr. Grodofsky or Dr. Shah in support of her claim.

10

fails to establish such a connection. Further, WCJ Lawrence issued a reasoned decision by making all the findings necessary to resolve the reinstatement petition.

When a claimant seeks a reinstatement of benefits, her burden of proof is dependent on whether her benefits had been previously suspended or terminated. *Pieper v. Ametek-Thermox Instruments Division*, 584 A.2d 301, 304-05 (Pa. 1990). "A claimant seeking reinstatement of suspended benefits must prove that his or her earning power is once again adversely affected by his or her disability, and that such disability is a continuation of that which arose from his or her original claim." *Bufford v. Workers' Compensation Appeal Board (North American Telecom)*, 2 A.3d 548, 558 (Pa. 2010). "In the case of terminated benefits, the Act place[s] the burden on the claimant seeking reinstatement to show a causal connection between his or her current condition and the prior work-related injury." *Id.* at 551. Thus, "[a] claimant seeking [a] reinstatement of benefits following a termination carries a heavy burden because the claimant has been adjudicated to be fully recovered." *National Fiberstock Corp. v. Workers' Compensation Appeal Board (Grahl)*, 955 A.2d 1057, 1062 (Pa. Cmwlth. 2008). "In order to prevail on a reinstatement petition after workers' compensation benefits have been terminated, a claimant must establish that [his or] her disability 'has increased or recurred since the prior decision and that [his or] her physical condition has changed in some manner.'" *Namani v. Workers' Compensation Appeal Board (A. Duie Pyle)*, 32 A.3d 850, 854 (Pa. Cmwlth. 2011) (*quoting Taylor v. Workers' Compensation Appeal Board (Servistar Corporation)*, 883 A.2d 710, 713 (Pa. Cmwlth. 2005)). The claimant must also establish "a causal connection between the prior work-related injury and [his or her] present disability." *Pieper*, 584 A.2d at 305-06. Further, a claimant must prove the change in his or her physical condition "by precise and credible evidence of a more

11

definite and specific nature than that upon which initial compensation was based." *National Fiberstock Corp.*, 955 A.2d at 1062 (citation omitted).

Here, WCJ Lawrence found Claimant's medical evidence incompetent. Whether "medical evidence is competent is a conclusion of law reviewable on appeal." *National Fiberstock Corp.*, 955 A.2d at 1063 n.6. "Where an expert's opinion is based on an assumption that is contrary to the established facts of record, that opinion is [incompetent]." *Taylor*, 883 A.2d at 713. However, "[a] medical expert's opinion is not rendered incompetent unless it is *solely* based on inaccurate or false information." *American Contracting Enterprises, Inc. v. Workers' Compensation Appeal Board (Hurley)*, 789 A.2d 391, 396 (Pa. Cmwlth. 2001) (emphasis in original). "[I]t is well established that the opinion of a medical expert must be viewed *as a whole*, and that inaccurate information will not defeat that opinion unless it is dependent on those inaccuracies." *Id.* (emphasis in original).

As stated above, Claimant has the burden of proving a causal connection between the previously accepted work injury and her current disability. *Pieper*, 584 A.2d at 305-06. WCJ Lawrence found Claimant's medical evidence incompetent because none of her doctors established any connection between the accepted lumbar strain and her current complaints. First, Dr. Grodofsky made no attempt to address a causal connection. He stated that Claimant's 2014 injury led to a traumatic injury of her cervical and lumbar spine even though she was only found to have a lumbar strain and her claim of neck injuries was rejected by WCJ DiLorenzo in 2016. Dr. Grodofsky then went on to find that Claimant's back and neck pain resulted from preexisting spondylosis that was aggravated by her work injury. Again, Dr. Grodofsky did not acknowledge that Claimant's accepted injury was a lumbar strain from which she had fully recovered, nor did he attempt to explain

12

how Claimant could fully recover from a lumbar strain and then not only suffer a recurrence of the strain, but have the strain cause an aggravation of preexisting spondylosis.

Second, Dr. Shah described Claimant's 2014 work injury as causing neck and back pain even though her claim of neck injuries was rejected by WCJ DiLorenzo. He diagnosed Claimant with cervical and lumbar radiculopathy that was aggravated by her work injury. Dr. Shah does not mention that the accepted work injury was a lumbar strain from which Claimant had fully recovered or address how a lumbar strain could recur and cause such an aggravation.

Third, in his 2018 treatment record, Dr. Murphy diagnosed Claimant with numerous neck and back injuries along with anxiety, depression and facial twitching. He claimed that all the diagnoses are related to the work incident but does not identify the work injury as a lumbar strain. He also does not acknowledge WCJ DiLorenzo's 2016 decision that found that Claimant had fully recovered from her lumbar strain and rejected Claimant's attempt to include neck injuries, anxiety, and depression as work-related injuries. In his undated report, Dr. Murphy does acknowledge the work injury as a lumbar strain. However, he does not acknowledge that Claimant was found to have fully recovered from the lumbar strain. As such, he does not address how she could have fully recovered from the lumbar strain and then not only have it recur, but also to create numerous new injuries. He again opines that Claimant's anxiety and depression were exacerbated by the work incident despite WCJ DiLorenzo's decision rejecting them as work injuries.

We agree with WCJ Lawrence, the Board, and Employer that Claimant's medical evidence is incompetent because it does not address how the work injuries were causally connected to her new diagnoses. Only one of her

13

doctors, Dr. Murphy, even acknowledged that the accepted work injury was a lumbar strain and he failed to address that Claimant had fully recovered from that injury in 2015 and was claiming a recurrence of the injury. Thus, none of her medical experts explained how the lumbar strain recurred and caused new injuries and/or aggravated preexisting injuries. Accordingly, none of the medical experts based their diagnoses on the factual record of the case, rendering their opinions incompetent.

Claimant also contends that WCJ Lawrence's decision was not reasoned because the WCJ did not fully address all of her evidence or her credibility. Section 422(a) of the Act, 77 P.S. §834, requires a WCJ to issue a reasoned decision, *i.e.*, one that permits adequate appellate review. *Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72, 76 (Pa. Cmwlth. 2012). Section 422(a), states, in relevant part:

> [A]ll findings of fact shall be based upon sufficient competent evidence to justify same. *All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached.* The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. *The adjudication shall provide the basis for meaningful appellate review*.

14

77 P.S. §834 (emphasis added). "[T]he 'reasoned decision' requirement does not require the WCJ to discuss all evidence presented; rather, the WCJ must make findings that are necessary to resolve the issues presented by the evidence and that are relevant to the decision." *Pryor v. Workers' Compensation Appeal Board (Colin Service Systems)*, 923 A.2d 1197, 1202 (Pa. Cmwlth. 2006).

Claimant argues that it is critical that the WCJ make credibility determinations regarding her testimony because she explained that her current symptoms were related to a worsening of her lumbar strain.[7] However, Claimant fails to address that not only is it her burden to establish that a causal connection exists between her current condition and the work injury, but also to establish by unequivocal medical evidence that a causal relationship exists between the work injury and her current condition where the causal relationship is not obvious. *Palmer v. Workers' Compensation Appeal Board (Helen Mining Company)*, 710 A.2d 1245, 1249 (Pa. Cmwlth. 1998). Unquestionably, the causal relationship here is not obvious. Claimant suffered a lumbar strain from which she fully recovered on November 17, 2015. Claimant testified that by Christmas of 2016, she began having pain that she deemed attributable to her lumbar strain. According to her 2018 reinstatement petition, her condition has now worsened to the point that she needs surgery. To suggest that a fully resolved lumbar strain not only recurred one year later but has managed to progress to the point that surgery is required because it has caused numerous additional medical issues is, to say the least, not a connection that is easily perceivable. Thus, Claimant needed medical evidence to establish the recurrence of her work injury. Because her medical evidence is legally incompetent to support her claim for reinstatement, her testimony is irrelevant. In short, even if

---

[7] Claimant presents no citation to legal authority in support of her claim.

15

WCJ Lawrence believed every word of her testimony, her reinstatement petition would be denied for lack of medical evidence sufficient to establish a recurrence.

Section 422(a) of the Act, 77 P.S. §834, requires a WCJ to make the findings of fact and credibility that are necessary for meaningful appellate review. Here, it was not necessary to address Claimant's credibility. Her medical evidence was deemed incompetent and without it she could not prevail. Thus, the WCJ properly complied with Section 422(a) of the Act, and his decision was reasoned.

For the above reasons, the Board's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Josephine Hinchey,                          :
                                            :
                        Petitioner          :
                                            :
            v.                              : No. 47 C.D. 2021
                                            :
Mercy Catholic Medical Center               :
(Workers' Compensation                      :
Appeal Board),                              :
                                            :
                        Respondent :

# **O R D E R**

AND NOW, this 28th day of April, 2022, the order of the Workers' Compensation Appeal Board dated December 23, 2020, is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge